[No. D015089. Fourth Dist., Div. One. Nov. 24, 1993.]

MARIE HEACOCK, Plaintiff and Appellant, v.
IVORETTE-TEXAS, INC., et al., Defendants and Appellants;
DAVID H. R. PAIN, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B, C, D and E of the Discussion.

**COUNSEL**

Philip Burkhardt and Carl A. Larson for Plaintif and Appellant.

Pain, Cluff & Olson and Jerry D. Cluff for Defendants and Appellants.

David H. R. Pain, in pro. per., for Defendant and Respondent.

**OPINION**

**WIENER, Acting P. J.**—Plaintiff Marie Heacock and defendants Ivor Sack and Ivorette-Texas, Inc. (collectively Sack) appeal from a judgment awarding Heacock nominal compensatory damages of $1 and punitive damages of $150,000 arising out of Heacock's expulsion from a joint venture with Sack and defendant David Pain. We affirm the judgment of liability against Sack and the judgment in favor of Pain. We conclude the trial court erred, however, in directing a verdict on the amount of compensatory damages and a retrial on that issue is required. We also conclude for a variety of reasons that the jury must be permitted to recalculate the appropriate amount of punitive damages. We therefore reverse as to the amount of both compensatory and punitive damages and remand for a limited retrial on those issues.

### FACTUAL AND PROCEDURAL BACKGROUND

Heacock was employed as a store manager by the Upstart Crow Corporation which operated a chain of bookstore coffeehouses, one of which was located in the Seaport Village shopping center in San Diego. When Upstart Crow declared bankruptcy, Heacock learned it might be possible to purchase the Seaport Village store. She began discussions with the company, negotiating a price of $250,000 cash, but was unable to secure the necessary financing on her own. Through a business broker she was introduced to Ivor Sack and David Pain, who also had an interest in acquiring the Seaport Village store. The three met in late April, 1987, and on May 4 jointly submitted a $250,000 offer to purchase which was accepted three days later with minor modifications. Escrow was opened on May 11 and the trio took possession of the store under an interim operating agreement on June 19 pending approval of the landlord and the bankruptcy court.

In its broad outlines, their arrangement initially required Heacock, Sack and Pain to each contribute $100,000 to the joint venture and to share equally in the profits. Heacock and Sack were to manage the store with each

receiving a monthly salary of $3,000. Pain would provide legal work for the joint venture as needed but would not receive any salary.

Ultimately Heacock did not contribute $100,000 of her own money. Instead, Sack paid $150,000 of the initial purchase price. Documents submitted to the bankruptcy court and the landlord continued to show Heacock as a one-third owner. According to Heacock, Sack encouraged her to allow him to loan her the $100,000 at an interest rate of 12 percent. She was to make interest-only payments of $1,000 per month with the principal to be repaid out of the anticipated profits of the venture. The business checking account reflects $1,000 monthly payments to Heacock which were redeposited into the account.[1]

Sack's version of the deal was different. Because Heacock was unable to raise the $100,000 as originally contemplated, Sack and Heacock agreed that at the successful conclusion of a one-year probationary period she could be entitled to become a one-third partner provided she contributed $100,000. She was also to share in the profits of the first year's operations provided she paid interest on the $100,000 at an annual rate of 12 percent. The checkbook notations were merely a means of accounting for the interest which would be due if Heacock chose to exercise her option to become a one-third owner retroactive to June 1987.

The exact nature of the joint venture was left ambiguous at first, the parties having discussed partnership and corporate forms as possibilities. In June 1987 they decided to use Ivorette-Texas, Inc. (Ivorette), a corporation wholly owned by Sack, as the vehicle to acquire the bookstore. Heacock testified that although no stock certificates were issued to her, she assumed she became a one-third owner of the corporation. The escrow instructions were amended in November 1987 to substitute Ivorette as the buyer. Sack served as president and Pain as secretary of Ivorette. Escrow finally closed in December with Ivorette taking title as the corporate owner of the bookstore.

In the summer of 1987 Pain was in the process of winding up his law practice. Beginning in July he began spending substantial periods of time traveling away from San Diego. Both he and Sack testified that in November they agreed to transform Pain's $100,000 equity investment into a loan to Sack at an 18 percent rate of interest. The change was not documented nor

---

[1]Sack admitted later adding a notation, "Demo—redeposit" to the check stub. Heacock argued this was an attempt to recharacterize the payments as something other than interest on the alleged loan. Sack testified that the notations were the result of Heacock's complaints that the unadorned checks seemed to reflect a loan for which she might be responsible.

was Heacock informed. Papers submitted to the bankruptcy court, landlord and port district in conjunction with the purchase of the bookstore, which was still in escrow, were never amended to reflect Pain's changed status. Indeed, Pain received no interest payments on the loan until March 1988.

Sack testified he encountered numerous problems with Heacock's management of the store between June 1987 and February 1988. On the weekend of February 20, Heacock took a trip out of town for personal reasons. When Sack inquired where Heacock was, one of the employees told him Heacock had asked her to lie to him about her whereabouts. The employee told Sack she was going to quit because she didn't want to have to lie to protect a supervisor.

Sack met with Heacock at the store Monday morning February 22 after she returned from the airport. At the conclusion of the meeting Sack told her she was being terminated as an employee. According to Heacock, it was the first time Sack had expressed dissatisfaction with her performance as manager. During the course of the meeting Sack called Pain and asked him to draft a termination letter. When Pain arrived a short time later, both he and Sack signed the letter as secretary and president, respectively, of Ivorette. Both Sack and Heacock testified that nothing was discussed during the meeting about Heacock's status as an owner. Sack testified that following the February 22 meeting he did not regard Heacock as a co-owner of the business and did not treat her as having any ownership rights because she had failed to fulfill her probationary conditions.

Heacock sued Sack, Pain and Ivorette claiming she was tortiously expelled from the joint venture and seeking compensatory and punitive damages. The trial court granted a directed verdict in favor of Pain and ruled that Heacock was limited to recovering nominal compensatory damages of $1. By a special verdict the jury found that Heacock was wrongfully excluded from the joint venture and that Sack and Ivorette were liable for punitive damages in the amount of $435,181.81. The trial court denied defendants' motion for judgment notwithstanding the verdict and motion for new trial but nonetheless purported to grant a remittitur reducing the punitive damage award to $150,000.[2] Judgment was entered on that amount plus costs. Pending the appeal, Heacock executed on the judgment which has now been fully satisfied.

---

[2]Heacock's counsel specifically inquired of the court how much time she would have to make the election whether to accept the remittitur or proceed with a new trial. The trial court responded, "You don't have an election. You're [sic] election is to appeal or not to appeal. That's it. It is not a new trial."

## DISCUSSION

As previously noted, both Heacock and Sack have appealed from the judgment raising multiple issues. In some cases the resolution of one issue may have implications for the analysis of others. Accordingly, we prefer not to preserve the organizational structure of the briefs by dividing the contentions between Heacock's appeal and Sack's cross-appeal. Rather we will consider the issues in a mixed format to facilitate the discussion of related questions in an appropriate sequence.

### A. Sack's Motion to Dismiss Heacock's Appeal

■ Before turning our attention to the substantive issues in the case we must first consider Sack's contention that Heacock has waived her right to appeal as to him by executing on the judgment, collecting the full amount and then filing an acknowledgment of satisfaction. It is true an appellant is generally prohibited from both accepting the benefits of a judgment and challenging it because the two courses of action are inconsistent. (*Royat* v. *Roberts* (1951) 107 Cal.App.2d 447, 449 [237 P.2d 25].) An appeal is not inconsistent, however, where the appellant is simply attempting to augment the judgment and the relief sought would not jeopardize the amount already collected. (See, e.g., *Clarke* v. *Angelus Memorial Assn.* (1936) 14 Cal.App.2d 750, 752 [58 P.2d 974]; *Royat* v. *Roberts, supra,* 107 Cal.App.2d at pp. 449-450.)

Thus in this case Heacock makes two arguments with respect to Sack. She contends the trial court erred in reducing the amount of punitive damages such that the jury's original verdict must be reinstated. Significantly, she is *not* asking for a new trial on the punitive damage issue which would call into question the amount of the judgment. As to this argument, therefore, Heacock falls within the exception to the general rule which would permit her appeal.[3]

Heacock's second argument is that the trial court erred in directing a verdict limiting her to a nominal amount of compensatory damages. Sack asserts that by executing on the judgment, Heacock has obtained $1 of compensatory damages and that acceptance of her argument on appeal would necessitate a retrial at which she might be awarded less. We disagree. For all practical purposes Heacock was awarded no compensatory damages and we must be realistic in deciding whether she has waived her right to appeal. In

---

[3]In deciding whether the plaintiff's appeal is inconsistent with having accepted the benefits of the judgment, we focus solely on the relief sought by the plaintiff, not on arguments made by a cross-appealing defendant. Here, our later conclusion that a retrial is required on the amount of punitive damages is attributable not to Heacock's appeal but rather to Sack's cross-appeal.

any event, the jury found Heacock had satisfied all the predicates for recovery of compensatory damages so that a retrial on the amount of damages would result in at least the award of the nominal sum she already received. Accordingly, the exception to the general rule which permits the appeal is applicable here as well.

Sack also argues that even if an appeal would normally be permitted based on the nature of the issues raised, Heacock is precluded here because she executed an acknowledgment of satisfaction. Having done so, Sack contends, no judgment remains from which Heacock may appeal. In support of his argument Sack cites the Supreme Court case of *Mathys* v. *Turner* (1956) 46 Cal.2d 364 [294 P.2d 947] and a 60-year-old decision of this court, *Guho* v. *City of San Diego* (1932) 124 Cal.App. 680 [13 P.2d 387]. We find both cases distinguishable.

In *Mathys* the Supreme Court held that a plaintiff's appeal did not come within the exception to the general rule because plaintiff was seeking a retrial following which ". . . the judgment could conceivably be smaller." (46 Cal.2d at p. 366.) Plaintiff nonetheless argued that satisfaction of the judgment should not bar the appeal because ". . . plaintiff's prior recordation of an abstract of judgment placed it within the power of defendant to compel a satisfaction." (*Ibid.*) The Supreme Court rejected this argument, noting that "[p]laintiff's acts in accepting payment and then executing and authorizing the filing of a complete satisfaction constituted a waiver of the right to appeal." (*Ibid.*) All these comments, however, were in the context of a case in which the exception to the general rule did not apply. Nowhere did the *Mathys* court suggest that mere satisfaction of the judgment, in and of itself, would bar an otherwise permissible appeal.

*Guho* v. *City of San Diego* is also distinguishable in part on a similar basis. In *Guho*, the defendant notified the plaintiff that the amount of the judgment would be paid in full upon receipt of a satisfaction of judgment, which the plaintiff agreed to and did provide. As in *Mathys*, the court noted that plaintiff's appeal sought a reversal of the judgment and retrial at which the amount awarded the plaintiff might be less than the amount of the judgment. (124 Cal.App. at p. 683.) In dicta the court went on to question whether, "[i]f it be assumed that this appellant had the right to accept the amount paid and thereafter appeal from the judgment . . . ," plaintiff's voluntary filing of a satisfaction of judgment waived his appeal rights. (*Id.* at p. 684.) The *Guho* court opined that plaintiff "waived his right by accepting such payment upon condition that he satisfy the judgment and by executing and authorizing to be filed, a full and complete satisfaction thereof." (*Ibid.*)

Putting to one side the nature of the court's comments as dicta, the facts of this case are distinguishable because here, Heacock did not execute a

satisfaction of judgment in exchange for payment. Rather she executed on the judgment and was required, by operation of statute (see Code Civ. Proc., § 724.010), to file an acknowledgment of satisfaction. Were the rule as argued by Sack—that a mere acknowledgment of satisfaction served to waive any appeal—it would completely eliminate that line of cases which allows an appeal where accepting benefits of the judgment is not inconsistent with arguing that the judgment should be increased. We accordingly conclude that Heacock's appeal as to Sack is proper.

B.-E.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed as to liability and reversed as to damages. The parties will bear their respective costs for this appeal.

Work, J., and Froehlich, J., concurred.

Petitions for a rehearing were denied December 27, 1993, and the petition of defendants and appellants for review by the Supreme Court was denied March 17, 1994.

---

*See footnote, *ante*, page 1665.