[No. B159518. Second Dist., Div. Three. Oct. 23, 2003.]

COUNTY OF LOS ANGELES et al., Plaintiffs and Appellants, v. SOUTHERN CALIFORNIA EDISON COMPANY et al., Defendants and Respondents.

## COUNSEL

Lloyd W. Pellman, County Counsel, Albert Ramseyer, Principal Deputy County Counsel, Derrick M. Au, Deputy County Counsel; Robert E. Shannon, City Attorney (Long Beach), Carol A. Shaw, Deputy City Attorney; Jerold A. Goddard, City Attorney (Redondo Beach) and John Eastman, Assistant City Attorney, for Plaintiffs and Appellants.

J. Eric Isken, John D. Buchanan and Lisa Delorme for Defendant and Respondent Southern California Edison Company.

Rodi, Pollock, Pettker, Galbraith & Cahill, Cris K. O'Neall and Wade E. Norwood for Defendants and Respondents The AES Corporation, AES Redondo Beach, L.L.C., AES Alamitos, L.L.C., and AES Southland, L.L.C.

## OPINION

**CROSKEY, J.**—County of Los Angeles together with City of Long Beach and City of Redondo Beach (collectively County) sued the buyer and seller of two electric power generating plants, alleging underpayment of documentary transfer taxes. The superior court conducted a nonjury trial, determined the value of the real property conveyed, and awarded County a total of $383,843 in damages. County appeals the judgment.

County contends (1) the buyer and seller must pay the full amount demanded in notices of tax delinquency before challenging the amount, but they failed to do so, so County is entitled to judgment in the full amount

demanded as a matter of law, and the buyer and seller can challenge that amount and seek a refund only by filing a claim with the county and then seeking judicial review; (2) if the value of the real property is properly at issue in this action, a decision by the Public Utilities Commission (PUC) conclusively establishes the value; (3) the trial court's value analysis and conclusion are flawed; and (4) County is entitled to prejudgment interest under Civil Code section 3287, subdivision (a), and a penalty assessment under a Redondo Beach ordinance.

We conclude that County has not shown error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Factual Background*

Southern California Edison Company (Edison) offered for sale by auction several electric power generating plants, including three plants in Long Beach, Redondo Beach, and Huntington Beach known as the Alamitos, Redondo Beach, and Huntington Beach generating stations. The AES Corporation (AES) was the successful bidder for the three plants as a group, offering $781 million. The Alamitos and Redondo Beach plants are the subjects of this case.

Edison and AES executed asset sales agreements in November 1997 stating sales prices of $436 million and $249 million for the Alamitos and Redondo Beach plants, respectively. The parties agreed that before the transaction closed they would allocate the sales prices to the various assets conveyed and agreed to rely on that allocation "for all purposes (including, without limitation, financial, accounting, and federal and state tax purposes) . . . ."

The PUC approved the sale of the three plants in December 1997 in decision No. 97-12-106, concluding that the auction was properly conducted and that the aggregate market value of the three plants was $781 million. The parties then allocated the $436 million sales price for the Alamitos plant as follows: $35,131,445 for land, $119,858,876 for machinery and equipment attached to the land, $263,569,780 for goodwill, and the remainder for other assets. They allocated the $249 million sales price for the Redondo Beach plant as follows: $32,145,180 for land, $77,685,539 for machinery and equipment attached to the land, $129,445,545 for goodwill, and the remainder for other assets. The parties completed the sales and recorded grant deeds in May 1998.

Edison reported to the county recorder that the documentary transfer tax due for recordation of the grant deeds was $171,167.15 for the Alamitos plant

and a total of $365,032.25 for the Redondo Beach plant, including $121,677.05 payable to Los Angeles County and $243,355.20 payable to City of Redondo Beach. Edison reported that those amounts were calculated based on the full value of the properties. The amounts correspond to real property values of $155,606,500 for the Alamitos plant and $110,615,130 for the Redondo Beach plant.

County counsel served notices of tax delinquency in September 1999 requesting payment of an additional $308,433 for the Alamitos plant and an additional $456,668 for the Redondo Beach plant, calculated based on the full sales prices of $436 million and $249 million, respectively. Edison and AES failed to pay the purported deficiency.

### 2. *The Complaint*

County sued Edison, The AES Corporation, AES Alamitos, L.L.C., AES Redondo Beach, L.L.C., AES Southland, L.L.C., and others in October 2000 seeking to recover delinquent documentary transfer taxes and to impose an equitable lien.[1] County filed a second amended complaint in April 2001 seeking a total of $765,101 in delinquent documentary transfer taxes payable to the county and the cities, calculated based on the total consideration paid for the plants.

### 3. *Motion to Bifurcate*

AES moved to bifurcate the trial asking the court to decide a preliminary legal question before conducting a trial on other issues. The question presented according to AES was how to determine "the consideration or value of the interest or property conveyed" (Rev. & Tax. Code, § 11911, subd. (a)) for purposes of calculating the documentary transfer tax when a sale includes real and personal property. AES argued that the "consideration or value" could be based on either the total consideration paid, the consideration paid for the real property pursuant to buyer's and seller's agreed allocation, or the fair market value of the real property.

County opposed the motion arguing that the court did not have sufficient information to decide how to determine the "consideration or value" of the property conveyed. County also argued that the "consideration or value" is the total consideration paid and that Edison and AES bear the burden of proof to show otherwise. County did not argue that it was entitled to the full amount demanded in the tax deficiency notices as a matter of law because the

---

[1] The relationship among the various AES entities is not relevant to our opinion, so we will not distinguish among them. We refer to them individually and collectively as AES.

defendants failed to pay that amount or that the court was precluded from determining the consideration or value due to the defendants' nonpayment.

The court granted the bifurcation motion in May 2001, stating that it would decide the proper basis for calculation of the documentary transfer tax before conducting a trial on the remaining issues.

### 4. *Ruling on How to Determine the Consideration or Value*

The parties submitted briefs on the basis for calculation of the tax. After a hearing, the court concluded in July 2001 that (1) the documentary transfer tax must be based on the "consideration or value" of the real property only, excluding personal and intangible property included in the sale; and (2) the "consideration or value" is the agreed price for the real property if the agreed price is determinate and is the fair market value if the agreed price is not determinate, but the buyer's and seller's agreed allocation of the sales price is not conclusive as to the agreed price for the real property.

### 5. *Stipulation*

The parties filed a stipulation in October 2001 stating that the buyer's and seller's agreed allocation of the sales prices are "not 'determinate' or 'definite' " for purposes of calculating the documentary transfer tax and that the total consideration paid for the plants "does not properly measure the documentary transfer tax."

### 6. *Trial on the Remaining Issues and Judgment*

The trial of the remaining issues commenced in October 2001. Appraisers testified on the value of the real property and power plants. The court decided during trial that the defendants bore the burden of proof on the question of the value of the real property.

The court issued an extensive tentative decision setting forth the facts, restating its prior rulings, and explaining in detail its decision on the real property value. The parties each objected to parts of the tentative decision and proposed changes. The court filed a statement of decision and later an amended statement of decision in March 2002, concluding that the value of the real property as of the date of conveyance was $255.6 million for the Alamitos plant and $193.6 million for the Redondo Beach plant and directing the parties to calculate the amounts of documentary transfer tax deficiency to include in the judgment. The court denied County's request for an equitable lien.

The parties submitted proposed judgments in which they agreed on the total amount of documentary transfer tax due under the court's decision. County's proposed judgment also included prejudgment interest at the rate of 10 percent from the date of conveyance. County did not file a motion for prejudgment interest, but filed only a declaration stating the purported legal basis for prejudgment interest.

The superior court entered a judgment in April 2002 awarding a total of $383,843 in damages against Edison and AES, including $146,280 in documentary transfer taxes payable to the county, $54,996 payable to City of Long Beach, and $182,567 payable to City of Redondo Beach. The court denied County's request for prejudgment interest. No party moved for a new trial.

### 7. Related Actions

AES applied to the county's assessment appeals board to reduce the assessed real property value for the Alamitos and Redondo Beach plants. AES moved the board to stay the administrative proceedings until the superior court decided this case, arguing that the same question, the fair market value of the real property, was at issue in each proceeding and that the decision in this case would be collateral estoppel. The board concluded that the superior court's decision in this action would not be binding on the board and denied the request for a stay. The appeals board then conducted evidentiary hearings and determined the value of the real property for purposes of property tax.

AES sought judicial review of the board's decision by suing the county in two separate actions in December 2002. AES moved the superior court in those actions to stay the actions pending our decision in this appeal, arguing that the same question, the fair market value of the real property, was at issue in each action and that the judgment in this action will be collateral estoppel. The superior court concluded that the judgment in this action probably will be collateral estoppel in the related actions, but denied the motion to stay on other grounds.[2]

### CONTENTIONS

County contends (1) AES and Edison must pay the full amount demanded in the notices of tax delinquency before challenging the amount, but they failed to do so, so County is entitled to judgment in the full amount demanded, and AES and Edison can challenge the amount of the assessment and seek a refund only by filing a claim with the county and then seeking

---

[2] We express no opinion on the collateral estoppel effect of the judgment.

judicial review; (2) if the value of the real property is properly at issue in this action, the PUC decision conclusively establishes the value; (3) the trial court's value analysis and conclusion are flawed; and (4) County is entitled to prejudgment interest under Civil Code section 3287, subdivision (a), and a penalty assessment under a Redondo Beach ordinance.

## DISCUSSION

1. *County Cannot Argue for the First Time on Appeal that the Value of the Real Property is Not at Issue in this Action*

A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as "pay first, litigate later," is well established and is based on a public policy reflected in the state Constitution, several statutes, and numerous court opinions.

Article XIII, section 32 of the state Constitution prohibits an action against the state to prevent or enjoin the collection of any tax, other than an action after payment of the tax to recover the tax paid.[3] The California Supreme Court in *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638–639 [217 Cal.Rptr. 238, 703 P.2d 1131], stated that the provisions of section 32 "establish that the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid. [¶] The important public policy behind this constitutional provision 'is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.' [Citation.] 'The fear that persistent interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions. [Citation.] . . .' [Citation.] . . . [¶] ' "The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason." [Citation.]' [Citation.]"

Several statutes in language similar to the prohibitory language of article XIII, section 32 of the state Constitution prohibit an action to prevent or enjoin the collection of specified taxes imposed by state or local government. (E.g., Rev. & Tax. Code, §§ 4807 [property tax], 6931 [sales and use taxes], 19381 [franchise and income taxes].) Other statutes provide for an action to recover a refund after payment is made. (*Id.,* §§ 5140 [property tax], 6933

---

[3] "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32.)

[sales and use taxes], 19382 [franchise and income taxes].) There is no constitutional or statutory provision that expressly prohibits an action against a local public agency to prevent or enjoin the collection of a documentary transfer tax, however. (See Rev. & Tax. Code, §§ 11901–11934.)

Some courts have held that the "pay first, litigate later" rule applies broadly beyond the specific constitutional and statutory provisions. (*Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1137 [113 Cal.Rptr.2d 690] [held that the "pay first, litigate later" rule applied to a local parking tax, despite the absence of express constitutional or statutory authority]; *Writers Guild of America, West, Inc. v. City of Los Angeles* (2000) 77 Cal.App.4th 475, 483 [91 Cal.Rptr.2d 603] [same with regard to a local business tax].) Other courts, however, have held that the constitutional provision prohibiting an action to prevent or enjoin tax collection (Cal. Const., art. XIII, § 32) applies only to an action against the state, as stated in the provision. (*Eisley v. Mohan* (1948) 31 Cal.2d 637, 641 [192 P.2d 5] [construing former Cal. Const., art. XIII, § 15]; *Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665, 670 [85 Cal.Rptr.2d 414] [documentary transfer tax]; see *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 281, fn. 6 [165 Cal.Rptr. 122, 611 P.2d 463] [dictum].) In a similar vein, the California Supreme Court in *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 327 [87 Cal.Rptr.2d 423, 981 P.2d 52], held that the constitutional provision requires payment of the tax before maintaining a refund action but does not require payment of accrued interest on the tax, stating, " '[C]ourts, in interpreting statutes levying taxes, may not extend their provisions, by implication, beyond the clear import of the language used, nor enlarge upon their operation so as to embrace matters not specifically included.' [Citation.]"

This is not an action commenced by a taxpayer challenging the assessment or collection of a tax, as in the foregoing cases. Rather, AES and Edison challenge the documentary transfer taxes as defendants in an action commenced by the taxing authorities.

The Fourth District Court of Appeal, Division One has held that the public policy supporting the "pay first, litigate later" rule also applies when a taxpayer defends a collection action commenced by the taxing authority, so a taxpayer defendant who has not paid the tax cannot challenge the collection of the tax. (*Riverside County Community Facilities Dist. v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 660–661 [92 Cal.Rptr.2d 29] [property tax]; *Community Facilities Dist. v. Harvill* (1999) 74 Cal.App.4th 876, 882 [88 Cal. Rptr. 2d 405] [property tax].) The Second District Court of Appeal, Division Two has stated the contrary, albeit in dicta. (*Writers Guild of America, West, Inc. v. City of Los Angeles, supra,* 77 Cal.App.4th at p. 483 [local business tax].)

We need not decide whether the "pay first, litigate later" rule applies to documentary transfer taxes or whether the rule applies when a taxpayer defends an action to collect documentary transfer taxes, because there are two principal reasons not to apply the rule here. First, County did not invoke the rule in the trial court. County never argued based on the rule that it was entitled to judgment in the amount demanded in the tax deficiency notices or the amount alleged in the complaint as a matter of law and that the trial court should not determine the value of the real property as a question of fact.[4] Rather, County stipulated that the total consideration paid is not the proper basis for the tax; commenced its trial brief, "The issue before the Court is to judicially review the determination of the value of the land, tenements and realty pertaining to the Alamitos and Redondo Beach Power Generating Stations . . . as of May 15, 1998, as applied for purposes of the documentary transfer tax . . ."; and presented evidence on the value of the real property as of the date of conveyance.

■ The doctrine of waiver ordinarily prevents a party from arguing for the first time on appeal questions that were not presented to the trial court. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *In re Riva M.* (1991) 235 Cal.App.3d 403, 411–412 [286 Cal.Rptr. 592]). The doctrine of invited error prevents a party from asserting an alleged error as grounds for reversal when the party through its own conduct induced the commission of the error. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79]; *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1414 [122 Cal.Rptr.2d 167].) Related to these doctrines is the doctrine of theory of trial: "Where the parties try the case on the assumption that a cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, or that other steps affecting the course of the trial are correct, neither party can change this theory for purposes of review on appeal." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 399, pp. 451–452.) ■ Based on these doctrines, we conclude that after stipulating that the total consideration paid is not the proper basis for the tax,

---

[4] County referred to the "pay first, litigate later" rule in arguing to the trial court that the defendants should bear the burden of proof as to value and in arguing in their posttrial brief that the real property value should be determined by subtracting the value of the personal property from the total consideration paid. County did not argue based on the rule, however, that as a matter of law it was entitled to judgment in the amount demanded in the tax deficiency notices or the amount alleged in the complaint. County also referred to the "pay first, litigate later" rule in arguing during trial that the defendants failed to exhaust an administrative remedy available to challenge a tax deficiency notice served by City of Redondo Beach and that the amount of tax due to the city therefore was conclusively established. The trial court rejected that argument, concluding among other things that the argument was contrary to the parties' stipulation that the total consideration paid does not determine the tax basis and that County failed to timely raise the issue in the first phase of the bifurcated trial. County does not challenge that ruling on appeal.

requesting a judicial determination of the value of the real property, and actively litigating that issue, County cannot for the first time on appeal argue that as a matter of law it is entitled to judgment in an amount based on the total consideration paid for the plants, as demanded in its tax delinquency notices, and that the trial court erred by determining the value.[5]

Second, it would serve no useful purpose to reverse the judgment and require a second trial on the same issue. The defendants in the first trial would be plaintiffs in the second trial and would prosecute the case as a refund action (Rev. & Tax. Code, §§ 5096 et seq., 11934). Other than the reversal of the parties' litigation designations, however, it appears that the second trial would be substantially identical to the first, and there is no reason to believe that a second trial would produce a different result. Requiring the defendants to "pay first, litigate later" at this late date would benefit County in the short run, but would undermine judicial efficiency and would cost the court and the parties needless effort and expense.

Assuming for the purpose of argument that the "pay first, litigate later" rule applies beyond the specific constitutional and statutory provisions, the public policy supporting extension of the rule is more compelling when there has

---

[5] The "pay first, litigate later" rule bars an action to challenge a tax before the tax has been paid, as stated *ante*. A court has no authority to grant relief to a taxpayer in a prepayment action where the rule applies, so any relief granted can be said to be in excess of jurisdiction. (See *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288, 291 [109 P.2d 942] [distinguishing "lack of jurisdiction" in a fundamental sense from "lack of jurisdiction" or "excess of jurisdiction" in a broader sense]; *In re Andres G.* (1998) 64 Cal.App.4th 476, 482 [75 Cal.Rptr.2d 285].) We construe statements to the effect that a court has no jurisdiction to grant relief to a taxpayer in a prepayment action (e.g., *Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th 310, 323) to mean that any relief granted would be in excess of jurisdiction in the broader sense. This does not mean that a court has no fundamental jurisdiction over the subject matter in such an action or that an objection based on the "pay first, litigate later" rule cannot be waived. "[I]ssues relating to jurisdiction in its less fundamental sense may be subject to bars including waiver . . . and forfeiture . . . ." (*People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [122 Cal.Rptr.2d 326, 49 P.3d 1067], citations omitted.) "The parties to an action over which the court has general jurisdiction cannot be heard to claim lack of power to try a particular issue after they have consented to a trial thereof and have participated in the same. [Citations.]" (*Hoshour v. County of Contra Costa* (1962) 203 Cal.App.2d 602, 605 [21 Cal.Rptr. 714].) Article XIII, section 32 of the state Constitution and similar statutory provisions do not state that a court has no subject matter jurisdiction to hear an action if the taxpayer challenges a tax before paying the tax, but only that a court has no authority to grant relief to a taxpayer in those circumstances. We therefore conclude that the "pay first, litigate later" rule, to the extent it might apply in these circumstances, does not affect a court's fundamental jurisdiction and can be waived. (Cf. *Mower, supra,* at p. 474, fn. 6 [held that limited immunity from prosecution under Health & Saf. Code, § 11362.5, subd. (d), does not affect a court's fundamental jurisdiction and can be waived]; *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 731 [192 P.2d 916] [held that a statutory "pay first, litigate later" rule in the former Unemployment Insurance Act did not restrict the court's original jurisdiction in a mandate action].)

been no trial of the ultimate issues but only a ruling on a demurrer to a taxpayer's complaint or on a dispositive pretrial motion. (See *Flying Dutchman Park, Inc. v. City and County of San Francisco, supra,* 93 Cal.App.4th at p. 1132 [demurrer]; *Writers Guild of America, West, Inc. v. City of Los Angeles, supra,* 77 Cal.App.4th at p. 477 [demurrer]; *Riverside County Community Facilities Dist. v. Bainbridge 17, supra,* 77 Cal.App.4th at p. 647 [summary judgment]; *Community Facilities Dist. v. Harvill, supra,* 74 Cal.App.4th at p. 878 [summary judgment].) County offers no compelling reason to apply the rule after a completed trial in this case.

### 2. *The PUC Decision Does Not Conclusively Establish the Value*

County argued to the trial court that the PUC's determination that the market value of the three plants was $781 million supports the conclusion that the consideration paid for the plants is the best indicator of the value of the real property. County did not argue that the PUC decision conclusively establishes the value of the real property, but presented that question as a question of fact for the trial court to decide. Apart from the impediments resulting from County's conduct in the trial court and failure to raise the issue below, as discussed *ante,* we conclude that the PUC decision does not conclusively establish the value of the real property.

■ A final decision by an administrative agency may be given collateral estoppel effect in a subsequent judicial action if the agency acted in a judicial capacity and resolved disputed factual issues that the parties had an adequate opportunity to litigate. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 324 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) Collateral estoppel applies, however, only if the present issue is identical to an issue decided in a prior proceeding. (*Ibid.*; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341–342 [272 Cal.Rptr. 767, 795 P.2d 1223] [stating further, "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]"].) We conclude that the issue presented and decided in the PUC proceeding was not identical to the issue presented here. We therefore need not decide whether the other requirements for application of collateral estoppel are present here.

■ A public utility proposing to sell a plant or other property necessary or useful in the performance of its duties must first obtain the PUC's authorization. (Pub. Util. Code, § 851.) Property sold to a purchaser "dealing with such property in good faith for value" is conclusively presumed to be property that is not necessary or useful. (*Ibid.*) Pursuant to Public Utilities Code section 851, the PUC concluded that the aggregate market value of the Alamitos, Redondo Beach, and Huntington Beach plants was the purchase

price of $781 million. The PUC did not distinguish the value of the real property from the value of the personal property, however. Moreover, the PUC made no finding as to the value of each individual plant. Since County has not shown that those issues were either presented to the PUC or actually decided by the PUC, the PUC decision is not collateral estoppel on those issues.

### 3. *County Cannot Argue for the First Time on Appeal that the Damages Awarded are Inadequate*

■  Failure to move for a new trial on the ground of excessive or inadequate damages precludes a challenge on appeal to the amount of damages if the challenge turns on the credibility of witnesses, conflicting evidence, or other factual questions. (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 918–919, & fn. 6 [114 Cal.Rptr. 622, 523 P.2d 662]; *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 122 [135 Cal.Rptr. 802].) A trial court ruling on a new trial motion on the ground of excessive or inadequate damages must weigh the evidence and acts as an independent trier of fact. (Code Civ. Proc., § 657; *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 [93 Cal.Rptr.2d 60, 993 P.2d 388].) Thus, the trial court is in a far better position than the Court of Appeal to evaluate the amount of damages awarded in light of the evidence presented at trial. (*Lane, supra,* at p. 412; *Schroeder, supra,* at p. 919.)

"When defendants first challenge the damage award on appeal, without a motion for new trial, they unnecessarily burden the appellate courts with issues which can and should be resolved at the trial level. [Fn. omitted.]" (*Schroeder v. Auto Driveaway Co., supra,* 11 Cal.3d at p. 919.) The same is true when a plaintiff challenges a damage award on appeal on the ground of inadequacy.

■  The value of real property is a question of fact. The selection and application of an appropriate appraisal method also are factual questions, provided that the method is legally valid and is not arbitrary. (*Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354]; *Dennis v. County of Santa Clara* (1989) 215 Cal.App.3d 1019, 1025–1026 [263 Cal.Rptr. 887]; *Trailer Train Co. v. State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 583 [225 Cal.Rptr. 717].) Questions presented by County such as whether the total consideration paid minus the personal property value is the most reliable method to determine the real property value; whether the cost approach is reliable in these circumstances; whether the sale included intangible assets such as going concern value and goodwill; whether the work force in place was a valuable

asset; whether the proximity of infrastructure was an intangible asset or a factor affecting the real property value; and whether land conveyed by Edison with an option to reacquire the land for nominal consideration was a valuable asset are factual questions that should have been presented to the trial court in a new trial motion. Since County failed to move for a new trial on the ground of inadequate damages, County cannot challenge the amount of the award on appeal.

### 4. *County's Legal Challenges to the Valuation Method Are Groundless*

County also presents legal questions concerning the validity of the trial court's valuation method. County contends the real property value should include the value of operating permits and intangible assets essential to the operation of a plant and the going concern value of the plants as businesses. County cites no authority for these arguments.

█ Documentary transfer tax is calculated based on the value of the "realty." (Rev. & Tax. Code, § 11911, subd. (a).) Although the Revenue and Taxation Code does not define "realty" for purposes of section 11911, the term commonly encompasses only real property and improvements, excluding personal property. (Cf. Rev. & Tax. Code, §§ 104, 105 [defining "real property" and "improvements" for purposes of property tax].) █ Property is valued for purposes of property tax by assuming the presence of intangible assets necessary to put the property to productive use, but excluding the value of those intangible assets, and also excluding the value of intangible assets relating to the going concern value of a business. (Rev. & Tax. Code, §§ 110, subds. (d), (e), 212, subd. (c).)[6] County offers no reason why the valuation of property for purposes of documentary transfer tax should differ from the valuation of property for purposes of property tax, with respect to intangible assets.[7] County therefore has not shown error.

---

[6] "(d) Except as provided in subdivision (e), for purposes of determining the 'full cash value' or 'fair market value' of any taxable property, all of the following shall apply:

"(1) The value of intangible assets and rights relating to the going concern value of a business using taxable property shall not enhance or be reflected in the value of the taxable property. [¶] . . . [¶]

"(e) Taxable property may be assessed and valued by assuming the presence of intangible assets or rights necessary to put the taxable property to beneficial or productive use." (Rev. & Tax. Code, § 110, subds. (d), (e).)

"(c) Intangible assets and rights are exempt from taxation and, except as otherwise provided in the following sentence, the value of intangible assets and rights shall not enhance or be reflected in the value of taxable property. Taxable property may be assessed and valued by assuming the presence of intangible assets or rights necessary to put the taxable property to beneficial or productive use." (Rev. & Tax. Code, § 212, subd. (c).)

[7] We acknowledge, of course, that documentary transfer tax is not a property tax, but rather a tax on the exercise of the privilege of conveying property. (*City of Huntington Beach v.*

Moreover, it appears that County's principal dispute concerning the value of intangible assets is not the legal question whether the real property value should include the value of intangible assets, but a factual question whether the sale here included valuable intangible assets apart from the real property, as discussed *ante*.

5. *County Is Not Entitled to Prejudgment Interest Based on Legal Grounds that it Failed to Assert Below or a Penalty Assessment that it Failed to Request Below*

County requested prejudgment interest in the trial court, arguing that the defendants would have been entitled to prejudgment interest in a refund action under Revenue and Taxation Code section 5151, so County should be entitled to prejudgment interest in this action. County did not move for or request prejudgment interest under Civil Code section 3287, subdivision (a), so the trial court did not err by failing to award prejudgment interest under that statute. (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 829–831 [76 Cal.Rptr.2d 743].) ■ Moreover, Civil Code section 3287, subdivision (a), authorizes prejudgment interest only if the damages were "certain, or capable of being made certain by calculation." Damages that must be determined by the trier of fact based on conflicting evidence of the property value do not satisfy this requirement. (*Lineman v. Schmid* (1948) 32 Cal.2d 204, 212 [195 P.2d 408]; *Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1172–1173 [286 Cal.Rptr. 146].)

County for the first time on appeal also seeks to impose a penalty assessment under a Redondo Beach ordinance, after failing to raise the issue before the trial court at any time. County as plaintiff must present its case to the trial court in the first instance and cannot seek new items of damage for the first time on appeal. Accordingly, we need not decide whether the ordinance applies in these circumstances.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 22, 2004.

*Superior Court* (1978) 78 Cal.App.3d 333, 340–341 [144 Cal.Rptr. 236]; cf. *Ingels v. Riley* (1936) 5 Cal.2d 154, 159–160 [53 P.2d 939].)