Filed 6/17/14  Gildelatorre v. Bay Vista Methodist Heights CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO GILDELATORRE, SR., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BAY VISTA METHODIST HEIGHTS, INC., <br><br> Defendant and Respondent. | D063616 <br><br><br> (Super. Ct. No. 37-2011-00100606-CU-OE-CTL ) |

APPEAL from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  The motion to dismiss the cross-appeal and the motion for sanctions are granted.

Burkhardt & Larson and Philip Burkhardt for Plaintiff and Appellant.

North County Law Firm, Dena M. Acosta; Kilpatrick Townsend & Stockton, Maureen A. Sheehy and Gregory P. Farnham for Defendant and Respondent.

Bay Vista Methodist Heights, Inc. (Bay Vista) appealed a monetary judgment in favor of Alejandro Gildelatorre, Sr.  Gildelatorre filed a cross-appeal, contending the jury did not award all of the damages supported by the uncontroverted evidence.  After notice

of the appeal and cross-appeal were filed, the parties engaged in settlement discussions. Although they did not reach a settlement, Bay Vista paid an agreed upon amount to satisfy the entire judgment, and an acknowledgment of satisfaction of judgment was filed. Bay Vista abandoned its appeal, but Gildelatorre did not.

After Gildelatorre filed his opening brief, Bay Vista, in addition to filing a respondent's brief, moved to dismiss the cross-appeal on the grounds that (1) Gildelatorre's execution of a satisfaction of judgment waived his appellate rights; (2) the cross-appeal is moot; and (3) Gildelatorre is equitably estopped from pursing his cross-appeal. Finding merit in Bay Vista's first argument, we grant the motion to dismiss the appeal.

Bay Vista also brings a motion for sanctions, claiming Gildelatorre's appeal was frivolous. We agree and are particularly troubled by Gildelatorre's attorney's posttrial actions. Thus, we grant the motion.

FACTUAL AND PROCEDURAL BACKGROUND

Gildelatorre brought suit against Bay Vista regarding an employment dispute. The matter went to trial where one of the primary issues was whether Bay Vista entered into a written employment agreement with Gildelatorre. Gildelatorre argued, under the written employment agreement, Bay Vista was required to pay him an annual salary of $110,000 with a performance bonus of about $10,000. He also maintained he was owed severance pay, vacation pay, and the value of his health benefits as well as waiting time penalties under Labor Code section 203.

2

Among other contentions, Bay Vista asserted the written employment agreement was void and its board had approved an annual salary of $72,000 for Gildelatorre.

The jury found in favor of Gildelatorre and awarded him $83,865.12 plus penalties under Labor Code section 203. As part of the damages awarded, the jury determined that Gildelatorre was entitled to two months of salary totaling $12,000. It also awarded damages for vacation and severance pay. It calculated the penalties under Labor Code section 203 using an annual salary of $72,000. The jury, however, did not award damages based on any bonus or health insurance owed Gildelatorre.

Bay Vista appealed the judgment, and Gildelatorre filed a cross-appeal arguing his damages should be increased to conform to the evidence. Bay Vista also posted a $164,670 bond to stay enforcement of the judgment.

Although Bay Vista filed an appeal and Gildelatorre a cross-appeal, the parties engaged in settlement negotiations. These efforts intensified after Gildelatorre moved to increase the amount of the bond Bay Vista posted. Gildelatorre's motion proved successful, resulting in the court increasing the bond amount by $117,630.68 to account for attorney fees owed Gildelatorre's attorney. After the hearing on Gildelatorre's motion, Gildelatorre's attorney (Philip Burkhardt) approached Bay Vista's attorney (Dena Acosta) to further discuss settlement, noting that the parties were only $40,000 apart. Burkhardt represented that his client would be willing to settle the matter for a $170,000 one-time payment or payments totaling $180,000 over a six-month period, which would include interest. This demand included a mutual release of all claims and dismissal of the appeal and cross-appeal.

3

Four days later, Burkhardt sent an email to Acosta stating, among other things, "[a]re we settling this case are [sic] not?" In response to Burkhardt's email, Acosta asked Burkhardt for, as an alternative to settlement, a calculation of the amount Bay Vista would need to pay to satisfy the judgment as of June 1, 2013. In addition, Acosta asked for an upcoming hearing to be continued to allow Bay Vista to get its bond released, which would allow Bay Vista to pay the judgment if the parties agreed to that resolution. Acosta ended her email by stating: "This seems reasonable as you & your client would get an additional $25K, i.e., full value, there'd be no need to haggle over settlement terms and of course the appeal would be dismissed."

Within 90 minutes of receiving Acosta's email, Burkhardt provided the calculation to satisfy the judgment on June 1, 2013. His email contained only his calculations.

Three days later, the parties appeared in court to request the court issue an order releasing Bay Vista's bond. Acosta represented to the court that the parties had reached a settlement and Bay Vista needed the funds from the bond to pay a portion of the judgment. Burkhardt offered no comment and remained silent when Acosta stated the parties had settled the matter. A stipulation and order releasing the bond was filed with the court that day.

The parties made arrangements for Bay Vista to pay the judgment on June 5, 2013. Prior to that date, Acosta sent Burkhardt an email with her calculation that Bay Vista owed $195,470.65 to satisfy the judgment as of June 5. In response, Burkhardt sent a reply email stating, "Close enough."

4

Acosta along with another attorney representing Bay Vista, Kandace Watson, met with Burkhardt on June 5 in his office. Acosta brought a check made payable to Gildelatorre in the amount of $195,470.65, an acknowledgement of satisfaction of judgment, and a demand for acknowledgement of satisfaction of judgment pursuant to Code of Civil Procedure section 724.050. Acosta stated she brought the demand as a "formality and precaution."

According to Acosta and Watson, at the June 5 meeting, Burkhardt argued that there were additional sums due for postjudgment attorney fees. Acosta and Watson disagreed, asserting that Gildelatorre would receive $25,000 more than what he previously demanded to settle the case. Watson then took the check and left the room.

According to Acosta, she and Burkhardt continued to discuss the dispute for an additional 20 or 30 minutes. After Watson left, Burkhardt again raised his preference for a mutual release, but did not ultimately demand one. Instead, their discussion focused on whether Gildelatorre was entitled to additional attorney fees and costs for postjudgment activities. Acosta reiterated that Bay Vista was paying Gildelatorre $25,000 more than his last settlement demand. Acosta then left the room.

Watson later returned to Burkhardt's office with the check and another individual who served as a witness. According to Watson, Burkhardt ceased his demand for additional attorney fees. Watson insisted that Burkhardt sign documents acknowledging that the payment constituted full satisfaction of judgment. Burkhardt agreed to file the acknowledgment of satisfaction of judgment with the court and signed as "received" on "6/5/13" a record of the check, which bore the legend "FULL SATISFACTION OF

5

JUDGMENT." The witness signed the record as well and dated his own signature "6/5/13." Watson then gave Burkhardt the check that stated on its face "FULL SATISFACTION OF JUDGMENT."

According to Burkhardt, during the June 5 meeting, he refused to sign the acknowledgement of satisfaction of judgment because he was not sure the tender was sufficient to support the demand under Code of Civil Procedure section 724.050. He claims to have received the check unconditionally.

Burkhardt made the following notation on the back of the check prior to cashing it: "Protest per CCP 1526(a)." Burkhardt stated he made this notation to ensure that the cashing of the check was not treated as an accord and satisfaction.

Burkhardt did not sign the acknowledgement of satisfaction of judgment until June 11, 2013. He spent the time after the June 5 meeting until he signed the acknowledgement researching his obligations under the "particular factual context of this case, including the pendency of appeals by both parties."

The acknowledgment of satisfaction of judgment was filed on June 14, 2013. Three days later, Bay Vista abandoned its appeal.

Gildelatorre did not abandon his cross-appeal and served his opening brief almost four months later. In addition to filing a respondent's brief, Bay Vista moved to dismiss the cross-appeal and for sanctions.

DISCUSSION

Bay Vista contends Gildelatorre waived his right to appeal the judgment here because his attorney executed a satisfaction of judgment. In general, it is inconsistent to

6

accept the benefits of a judgment and prosecute an appeal from that judgment. Accepting

the benefits of a judgment will waive an appeal unless an exception applies. (*Lee v.*

*Brown* (1976) 18 Cal.3d 110, 114.) One such exception is when the "appellant is

concededly entitled to the accepted benefits, and his right to them is unaffected by the

outcome of the case on appeal." (*Id*. at p. 115.) Another exception occurs when "the

appellant is simply attempting to augment the judgment and the relief sought would not

jeopardize the amount already collected." (*Heacock v. Ivorette-Texas, Inc.* (1993)

20 Cal.App.4h 1665, 1670 (*Heacock*).)

Gildelatorre contends the instant matter is the same as *Heacock*, *supra*,

20 Cal.App.4th 1665. In *Heacock*, the plaintiff was awarded $1 in compensatory

damages and over $435,000 in punitive damages. The trial court reduced the punitive

damage award to $150,000. Even though the plaintiff executed on the judgment and filed

a satisfaction of judgment, the plaintiff appealed. (*Id.* at p. 1669.) We held that although

a party cannot accept the benefits of a judgment and also challenge it on appeal, the

plaintiff was attempting to augment the judgment and the relief she was seeking would

not jeopardize the amount already awarded. (*Id*. at p. 1670.)

The plaintiff in *Heacock* was not asking for a retrial on the punitive damages. She

merely challenged the trial court's reduction of the jury's punitive damage award.

(*Heacock*, *supra*, 20 Cal.App.4th at p. 1670.) In addition, the plaintiff maintained the

trial court erred in directing a verdict limiting her to a nominal amount of compensatory

damages. (*Ibid*.) We noted that the jury found the plaintiff had satisfied "all the

predicates for recovery of compensatory damages so that a retrial on the amount of

7

damages would result in at least the award of the nominal sum she already received." (*Id.* at p. 1671.)

Here, Gildelatorre asserts he is not asking for a new trial. Instead, he frames the issue as a mere mathematical error by the jury. Gildelatorre contends he is requesting this court to increase the amount to conform to the evidence. He insists the evidence supporting his position is uncontroverted.

The foundation of Gildelatorre's argument is his claim that the jury found he and Bay Vista entered into a written employment agreement. He points out that the jury answered the first special verdict question in the affirmative: "Did Alejandro Gildelatorre and Bay Vista Methodist Heights enter into a valid employment contract that specified a length of time for which Alejandro Gildelatorre would remain employed?" Gildelatorre maintains the only employment agreement discussed at trial that was to exist for a specified length of time was the written agreement he claimed governed his employment with Bay Vista. He also notes that the jury awarded him damages for vacation and severance pay based on the written employment agreement. Gildelatorre thus concludes that the jury's failure to award him additional damages under the written contract for his bonus and health insurance as well as the calculation of his unpaid salary and penalties under the Labor Code was the result of calculation errors. In other words, Gildelatorre asserts there was no evidence in the record on which the jury could have concluded he was not entitled to the additional damages. We are not persuaded. On the record before us, the difference between Gildelatorre's asserted damages and the damages the jury awarded him are not necessarily mere calculation errors.

8

Gildelatorre claims that the written employment agreement, containing his annual salary of $110,000, took effect on April 9, 2008. However, it is undisputed that Gildelatorre never received the equivalent of a $110,000 annual salary while employed by Bay Vista. Instead, beginning in 2009 through the length of his employment with Bay Vista, Gildelatorre received a monthly salary of $6,000, reflecting an annual salary of $72,000.[1] Further, he testified that he was aware that Bay Vista's board approved his salary at $6,000. He attempted to explain away the discrepancy between his actual pay and the pay he claimed to be entitled to under the written employment agreement by asserting he had agreed to defer some of his salary to allow Bay Vista to invest in more properties. He testified that there was an expected source of funds that would pay the difference in his salary. In addition, he claimed that two other employees also agreed to defer their salaries. Nevertheless, other than his own testimony, Gildelatorre points to no evidence in the record that supports his position. He does not argue that the other two employees testified that they agreed to defer their respective salaries. And Gildelatorre ignores the possibility that the jury simply did not believe his testimony as to the deferral issue. On this record, it can reasonably be inferred that the jury found that Gildelatorre and Bay Vista agreed that Gildelatorre's annual salary would be $72,000 not the $110,000 from the written employment agreement.

We also note the jury was not asked to specifically decide whether Bay Vista and Gildelatorre entered into the written employment agreement dated April 9, 2008. Instead,

---

[1]     Gildelatorre received an additional $2,000 in 2009.

the jury was asked if they entered into a valid employment agreement for a specific period of time. Gildelatorre insists the only inference that can be drawn from the jury's affirmative response to this question is that it found the written employment agreement valid. Yet, the jury's damage award belies this conclusion. The jury appears to have awarded some damages under the written employment agreement (severance and vacation pay), rejected other requested damages under that same agreement (bonus and health insurance) and awarded damages per Bay Vista's contention that Gildelatorre's annual salary was $72,000. There was conflicting evidence regarding the validity of the written employment agreement as well as the amount of Gildelatorre's annual salary. On this record, we cannot say that the jury's award simply is the result of a mathematical mistake or that the evidence is uncontroverted on this issue.

Here, unlike the plaintiff in *Heacock*, *supra*, 20 Cal.App.4th 1665, Gildelatorre's claim that he is entitled to an increase in the amount of damages would require a new trial because the resolution of the issue involves conflicting evidence and the credibility of witnesses. Further, because the jury's verdict raises questions regarding the validity of at least a portion of the written employment agreement, a new trial could result in a reduction in the amount of damages. Therefore, Gildelatorre's execution of the acknowledgement of satisfaction of judgment waived his right to appeal the judgment. (*Lee v. Brown*, *supra*, 18 Cal.3d at p. 114.) Moreover, the conflicting evidence and the necessity of making credibility determinations to resolve the issue presented by Gildelatorre underscores the requirement that Gildelatorre move for a new trial on the grounds of inadequate damages before he could raise the same issue on appeal. (See

10

*County of Los Angeles v. Southern California Edison Co.* (2003) 112 Cal.App.4th 1108, 1121 (*County of Los Angeles*) ["Failure to move for a new trial on the ground of excessive or inadequate damages precludes a challenge on appeal to the amount of damages if the challenge turns on the credibility of witnesses, conflicting evidence, or other factual questions."].)

We next turn to Bay Vista's motion for sanctions. Bay Vista has filed a motion for sanctions, i.e., attorney fees in the amount of $25,000, which it has incurred in defending this appeal. As we discuss above, we determine Gildelatorre waived his right to appeal by executing the acknowledgement of satisfaction of judgment. Moreover, even had we not granted the motion to dismiss, we would not have reached the merits of Gildelatorre's appeal. Here, Gildelatorre's contentions require a weighing of the evidence and making credibility determinations. "A trial court ruling on a new trial motion on the ground of excessive or inadequate damages must weigh the evidence and acts as an independent trier of fact." (*County of Los Angeles, supra,* 112 Cal.App.4th at p. 1121.) The trial court thus is in a much better position than the Court of Appeal to evaluate the amount of damages awarded in light of the evidence presented at trial. (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412.) Accordingly, because Gildelatorre did not bring a motion for new trial, he forfeited his right to challenge the adequacy of the damages on appeal. (*County of Los Angeles, supra*, at pp. 1121-1122.) Thus, Gildelatorre's appeal is without merit.

The question remains whether the appeal is "indisputably" without merit, i.e., whether "any reasonable attorney would agree that the appeal is totally and completely

11

without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).) In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective. (See *Flaherty*, *supra*, 31 Cal.3d at pp. 649-650.) Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit. (*Estate of Walters* (1950) 99 Cal.App.2d 552, 558.)

The objective and subjective standards "are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Flaherty*, *supra*, 31 Cal.3d at pp. 649-650.) An unsuccessful appeal, however, " 'should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law.' " (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422.)

Although we recognize sanctions should be used sparingly to deter only the most egregious conduct (*Flaherty*, *supra*, 31 Cal.3d at pp. 649-650), we find them warranted here against Gildelatorre's counsel, Burkhardt. The frivolousness of this appeal is a product of Burkhardt's posttrial actions. The record indicates that Acosta believed her client would satisfy the judgment in lieu of settlement. Burkhardt did nothing to disabuse

12

her of this notion. Indeed, Burkhardt's conduct can be reasonably interpreted as supporting Acosta's belief. For example, in response to an email from Burkhardt inquiring about the status of settlement, Acosta requested Burkhardt provide the amount required to satisfy the judgment as of June 1, 2013 as an "alternative" to settlement. Burkhardt provided the requested amount within 90 minutes of receiving Acosta's email. Burkhardt knew that Acosta viewed a payment of the judgment as a substitute of settlement. He did not reject the idea, but merely provided a calculation of the judgment due by a certain date. Burkhardt's email appears to have been intentionally cagey.

Further, Burkhardt did nothing to correct the record at the hearing when Acosta represented to the superior court that the matter had settled. He attempts to explain away his silence by claiming he interpreted Acosta's statement as "meaning only that the issues before the court at that hearing were resolved." We find Burkhardt's explanation implausible. He had been attempting to negotiate a settlement with Acosta. He knew Acosta proposed the satisfaction of judgment as an alternative to settlement. By way of satisfying the judgment, Bay Vista would be paying Gildelatorre more than what he was demanding to settle the matter. Burkhardt agreed with Acosta that the bond should be released to provide Bay Vista with funds it could use to pay the judgment. The purpose of the hearing was to convince the superior court to issue an order releasing the bond. Clearly, Acosta believed that the funds from the bond would be necessary to pay the judgment and appeared before the court to obtain the bond funds to satisfy the judgment and resolve the matter instead of entering into a settlement. The only reasonable interpretation of Acosta's statement to the court that the parties reached a settlement is

13

that Acosta was referring to the entire matter. Burkhardt's post hoc attempt to justify his silence is not convincing.

Simply put, Burkhardt's posttrial actions easily crossed the line from zealous advocacy to indefensible artifice. Although he had numerous opportunities to make sure Acosta and the court understood his belief regarding the status of the matter, he did nothing. Moreover, any action he did take tended to support Acosta's position: The matter was being completely resolved through the payment of the judgment.

We do not take our decision to sanction lightly. However, we believe a failure to issue sanctions here would serve as tacit approval of Burkhardt's tactics.[2] Burkhardt's stratagem here ultimately caused Gildelatorre's appeal to be meritless. As such, after thoroughly reviewing the record and listening to oral argument, we are convinced by clear and convincing evidence (*San Bernardino Community Hospital v. Meeks* (1986) 187 Cal.App.3d 457, 470) that any reasonable attorney would agree the grounds advanced by Burkhardt here completely lacked merit and would not have pursued this appeal. (*Flaherty*, *supra*, 31 Cal.3d at pp. 649-650.)

Having concluded sanctions are warranted, we must determine an appropriate amount. "Factors relevant to determining the amount of sanctions to be awarded a party responding to a frivolous appeal include 'the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective

---

[2] Although we conclude sanctions are appropriate, we encourage Bay Vista's attorney to exercise more diligence in the future to ensure a matter is completely resolved.

14

frivolousness and delay; and the need for discouragement of like conduct in the future.' "

(*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 519; *Pollock v.*

*University of Southern California* (2003) 112 Cal.App.4th 1416, 1434 [one goal of

sanctions is to deter future frivolous litigation].)

As to the first factor, Bay Vista has told us it incurred more than $25,000 in

attorney fees and costs related to this appeal. We find this requested amount reasonable

and thus award it to Bay Vista.

Since there is no monetary judgment against Gildelatorre, the second factor is not

relevant to our analysis.

In this case, the degree of objective frivolousness is very high. Burkhardt's

posttrial deceptions led to the lack of merit in this appeal, and we conclude that "[n]o

competent attorney could conceivably believe in good faith" the appeal had any merit.

(Cf. *Papadakis v. Zelis* (1992) 8 Cal.App.4th 1146, 1149.) Thus, the case is not a close

one. (See *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 34.)

It also should be obvious there is a great need to deter conduct of this nature in the

future. In working to resolve a matter, an attorney should not engage in such blatant

obfuscation. It is more prudent and professional to deal with opposing counsel with

civility and honesty instead of gamesmanship that only leads to confusion, unnecessary

filings, and additional attorney fees. We cannot ignore Burkhardt's actions here. "It is

critical to both the bench and the bar that we be able to rely on the honesty of counsel.

The term 'officer of the court,' with all the assumptions of honor and integrity that append

15

to it, must not be allowed to lose its significance."  (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 292.)

## DISPOSITION

The motion to dismiss the cross-appeal is granted.  The motion for sanctions is granted.  As sanctions for a frivolous appeal, Burkhardt & Larson shall pay Bay Vista the amount of $25,000.  Bay Vista also is awarded its costs in connection with the cross-appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


McDONALD, J.


McINTYRE, J.