Filed 8/12/15  In re X.T. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re X.T., a Person Coming Under the Juvenile Court Law. | B259336 (Los Angeles County Super. Ct. No. DK01035) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.T.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Marguerite Downing, Judge.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel for Plaintiff and Respondent.

# INTRODUCTION

A.T. (mother) appeals from the juvenile court's jurisdiction and disposition orders finding her infant son, X.T., born in May 2014, a dependent child of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] and removing X.T. from mother's custody. Mother contends that there was not substantial evidence to support the juvenile court's jurisdictional and dispositional findings, and the dispositional order requiring mother to participate in a domestic violence support group should be reversed. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.     The Juvenile Proceeding Regarding X.T.'s Older Siblings

In November 2013, X.T.'s three siblings[2]—all aged three years and younger—had been detained from mother "due to failure to protect," and mother and M.P., the father of X.T.'s siblings, had been arrested. The record contains three first amended section 300 petitions filed in December 2013 for each of X.T.'s older siblings by the San Bernardino County Department of Children and Family Services (San Bernardino Department) with the juvenile court in San Bernardino County (Prior Petitions).

On December 10, 2013, the San Bernardino County juvenile court sustained the allegations of the Prior Petitions regarding X.T.'s siblings and specifically as follows: "b-1  The Mother suffers from substance abuse and as a result is unable provide adequate and responsible care for the child[ren]. [¶] . . . [¶] b-3  The Mother has engaged in acts of domestic violence in the presence of the child[ren], placing the child[ren] at substantial risk of physical and emotional harm. [¶] . . . [¶] b-5  On or about November 17, 2013 and on prior occasions the mother's home was unsafe for the children in that the home

---

[1]     All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]     X.T.'s three siblings are not parties to this appeal.

2

was littered with trash, feces and urine, there was no hot water in the home and there was no food in the home, placing the child[ren] at substantial risk of harm and neglect."

The file also contains the following: a San Bernardino Department report that stated on November 17, 2013 (while mother was pregnant with X.T.) a police officer said he had responded to mother's home on several occasions, had arrested mother and M.P. before, and was very familiar with the family. Mother told him that she used methamphetamine that day, and M.P. took their food stamps to purchase drugs. The police officer stated that he had "given the mother resources on numerous occasions for churches and other places to help her but she does not utilize them." He said that mother reported to him that "the children have not eaten in a couple of days," and she did not have diapers for the children in four days. The San Bernardino Department reported that there was no food in the home, the floors and the walls of the home had feces and urine on them, and there was no hot water. X.T.'s siblings had feces and urine on their bodies, did not have clothes or shoes on them, had scratches on their bodies, and they said that they were hungry; a Barstow Police Department report that stated mother was arrested on November 17, 2013, for having neglected X.T.'s siblings and was incapable of caring for them. The police report stated that mother said she was about four months pregnant, used methamphetamine, most recently two days earlier, and she was unable to care for X.T.'s siblings; a San Bernardino Department report that stated mother pled no contest to one count of willful cruelty to a child, in violation of Penal Code section 273a, subdivision (b), arising from her November 2013 arrest; a detention report filed by the San Bernardino Department regarding the Prior Petitions that noted on August 6, 2013, mother admitted to methamphetamine use "a couple of days prior"; a San Bernardino Department report that stated the family had a child welfare history including in April 2012 for emotional abuse and November 2012 for general neglect; a substance abuse referral that stated in November 2012 mother was provided with outpatient substance abuse referrals; a December 2013 San Bernardino Department report that stated case plans had been signed by mother in January and October 2013, and mother had been provided with referrals to substance abuse treatment programs; a San Bernardino

3

Department report that stated mother was uncooperative with services, and the services were terminated due to noncompliance; the San Bernardino Department's December 11, 2013, jurisdictional/disposition report that stated mother and the father of X.T's siblings moved to Compton, and the San Bernardino Department recommended that the case be transferred from the juvenile court in San Bernardino County to the juvenile court in Los Angeles County.

By April 23, 2014, the Prior Petitions case had been transferred to the juvenile court in Los Angeles County.

### B.     X.T.'s Juvenile Proceeding

In early May 2014, mother gave birth to X.T.  A few days thereafter, plaintiff and respondent Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition regarding X.T. alleging that mother had a history of illicit drug use, currently abused drugs, used illicit drugs during her pregnancy with X.T., and X.T.'s three older siblings were current dependents of the juvenile court due to mother's drug use.

The Department stated in its May 9, 2014, detention report that mother had "a criminal history" consisting of petty theft in July 2013, possession of marijuana in October 2013, and willful cruelty to a child in November 2013.  The Department did not state whether the alleged criminal acts resulted in convictions.

Attached to the May 9, 2014, detention report was mother's December 4, 2012, positive drug test for amphetamines.  The Department reported that on March 27, 2014, mother said that she was aware of the programs that she could attend for substance abuse, but she was afraid to attend them because she worried about feeling confined for six months.  When she was about seven months pregnant with X.T., the Department informed mother that it would be seeking to detain the baby (X.T.) because of mother's open dependency case.  According to the Department's May 9, 2014, detention report, mother said that she "wasn't sure if she could find a program that would accept her

4

pregnant but she was given two referrals that could assist her with finding a program that accepts pregnant women."

The Department reported that on April 14, 2014, mother went to an intake appointment for a substance abuse treatment program and completed documents to enter the program, but because she was due to deliver X.T. in three weeks, she was informed that she could not return to the program for one month, or until she was "cleared" by a physician. The Department's May 9, 2014, detention report stated that mother's visits with her older children were sporadic; mother stated she had visited the children only once in April.

The Department stated in its detention report that the day after X.T. was born, mother said at the hospital that "she is clean," the baby was healthy, and there should be no reason for the Department's intervention. Mother, however, understood the reason for X.T.'s removal and consented to his being detained. The Department stated that "Reasonable Efforts were made to prevent or eliminate the need for [X.T.]'s removal from the home. [¶] . . . [¶] Mother was previously court ordered to [participate in individual counseling, a domestic violence program, case management, parent training, and monitored visitation], however, mother just enrolled into the drug program . . . on 4/15/2014." X.T. was detained in the same home as his siblings. At the May 12, 2014, detention hearing, the juvenile court made prima facie findings to detain X.T. from the mother; ordered reunification and referral services be provided to mother, including random drug testing; and ordered mother to have monitored visits with X.T. at least three times a week.

The Department stated in its June 11, 2014, jurisdiction/disposition report that on April 15, 2014, mother commenced participating in a substance abuse treatment program, where she participated for 10 treatment days before leaving to give birth to X.T. On April 18, 2014, April 25, 2014, and May 27, 2014, mother tested negative for drugs. On May 28, 2014, mother's participation in the program was terminated after she asked for her case to be closed because she was moving to San Bernardino. On June 4, 2014, mother enrolled in a program in Victorville that included substance abuse classes, 12-step

5

meetings, early recovery skills, random testing, individual counseling, and parenting classes. Mother was randomly tested for substance abuse, and the test results were negative.

Mother's visits with X.T. were combined with her visits with X.T.'s siblings. A social worker stated that the visits were going well, but expressed concern that mother held X.T. for only short periods of time during visits, and otherwise, placed him in the car seat. Mother said X.T. should not "get use to the arms" and needed to learn to be independent. The Department recommended in its June 11, 2014, jurisdiction/disposition report that mother be referred to substance abuse counseling with random drug testing, individual and parenting counseling, and a domestic violence awareness program, and that she receive monitored visitation with X.T. and transportation assistance.

In the Department's July 16, 2014, last minute information for the court report, because mother resided in San Bernardino County, the Department recommended that the juvenile court transfer the case there in order that services could be provided locally. At the contested jurisdiction hearing, the juvenile court ordered a supplemental report and continued the matter to August 12, 2014.

On August 12, 2014, the Department submitted another last minute information for the court report, stating that on June 4, 2014, mother had enrolled at High Desert Center, and tested negative for drugs on July 21 and 28, 2014. According to a progress report, mother was attending the program and 12-step meetings. The Department again requested that the case be transferred to San Bernardino County.

At the August 12, 2014, contested jurisdiction hearing, without objection, the juvenile court admitted into evidence the Department's May 9, 2014, detention report; the June 11, 2014, jurisdiction/disposition report; and the July 16, 2014, and August 12, 2014, last minute information for the court reports. The juvenile court also took "judicial notice of the prior sustained [Prior Petitions] and the [related] legal file."

The juvenile court modified the sole allegation of the petition by striking any language of current drug use. The juvenile court sustained the petition pursuant to subdivision (b), with amended language, as follows: "[X.T.]'s mother . . . has a[n]

6

unresolved history of illicit drug use which renders the mother incapable of providing [X.T.] with regular care and supervision. The mother used illicit drugs during the mother's pregnancy with the child and had a positive toxicology screen for amphetamine on 12/04/2013.[3] [X.T.]'s siblings . . . are current dependents of the Juvenile Court due to the mother's illicit drug use. Such illicit drug use on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm and damage."

At the September 26, 2014, disposition hearing, the juvenile court found that X.T.'s father was unknown. The juvenile court introduced into evidence "the same documents that were received for adjudication," and took judicial notice of the court file. Over the objections made by the Department and X.T., the juvenile court received into evidence a letter from High Desert Child, Adolescent and Family Services Center stating that mother attended 43 sessions and had been absent on two occasions, her level of involvement was excellent, she had drug tested 11 times with negative results, and her last drug test was on September 15, 2014. According to the letter, mother "continues to grow" and was applying coping skills she had learned.

The juvenile court declared X.T. a dependent of the court and found that there was substantial risk of harm if he were returned to the mother. The juvenile court removed the child from mother's custody and ordered family reunification services for mother as well as unmonitored day visits up to four hours in length on condition mother continued to drug test negative and continued in her program. The juvenile court ordered mother's reunification services consist of a drug treatment program including drug testing and 12-step program, domestic violence support group, parenting program, and individual counseling to address case issues and family planning.[4] Mother timely appealed.

---

[3]     As the Department concedes, the reference to "12/04/2013" appears to be in error. The December 4 positive drug test was in 2012.

[4]     The record reflects that on December 12, 2014, this matter was transferred to the County of San Bernardino.

7

Mother contends that substantial evidence does not support juvenile court's finding that X.T. is a dependent child of the juvenile court pursuant to section 300, subdivision (b), and the order removing X.T. from her custody should therefore be reversed. We disagree.

### A. Standard of Review

We review the juvenile court's jurisdiction findings and disposition orders for substantial evidence. (*In re Quentin H*. (2014) 230 Cal.App.4th 608, 613.) "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment . . . . '"[The] [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [that the order is appropriate]."' [Citation.]" (*In re Matthew S*. (1988) 201 Cal.App.3d 315, 321.)

### B. Judicial Notice

In mother's reply brief, she contends that the juvenile court erred by taking judicial notice of the sustained Prior Petitions and the San Bernardino court file. Having not raised this issue in the opening brief, mother has forfeited this issue. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

Mother failed to object to that claimed error before the juvenile court, and therefore also forfeited the issue on that basis. "A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court." (*In re Elijah V*. (2005) 127 Cal.App.4th 576, 582; *People v. French* (2008) 43 Cal.4th 36, 46;

*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962; *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512, fn. 4; cf. *In re Christian P.* (2012) 208 Cal.App.4th 437, 445, fn. 4 [the mother did not forfeit her right to appeal the admission into evidence of the truth of the facts stated in the documents from the files of a companion case because the "[m]other clearly objected to the admission of hearsay evidence taken from those documents . . ."].) "Any other rule would ""'permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.'" [Citations.]' [Citation.]" (*In re Riva M.* (1991) 235 Cal.App.3d 403, 412.)

Mother concedes that she did not object to the juvenile court taking judicial notice of the court file concerning the Prior Petitions, but contends that "she never alleged that the court erred by taking judicial notice of the prior files . . . ." In her reply brief, however, mother contends that, "Judicial notice of the entire file is an improper use of judicial notice, and the court errs when it does so. [Citations]." She also argues that if the trial court takes judicial notice of the existence of documents in a court file, "it must identify with specificity exactly which documents or portion of the documents contained in a court file it is taking judicial notice of. [Citation.]" Because mother did not object to the juvenile court taking judicial notice of the court file concerning the Prior Petitions, to the extent mother contends that the juvenile court erred in that regard, mother forfeited the contention.

Mother argues "the concept of 'judicial notice' for the 'truth of the matters' judicially noticed was an erroneous application" of judicial notice. After the juvenile court took judicial notice of the court file concerning the Prior Petitions at the contested jurisdiction hearing, the Department argued, without objection, facts from that file, specifically from the detention, jurisdiction, and police reports, and that those facts "detail a very horrific picture." Based on these documents, the Department argued that

on several occasions mother and the father of X.T.'s siblings acknowledged using methamphetamine; the father of X.T.'s siblings used food stamps to buy drugs, with mother's knowledge, despite the fact that X.T.'s siblings had not eaten for days; X.T.'s siblings were found to have infected wounds because of mother's neglect; when mother and the father of X.T.'s siblings were arrested for child endangerment, the police stated that they were very familiar with mother's case because they had been to mother's house on multiple occasions; X.T.'s siblings had feces and urine on their bodies; there were feces and urine on the walls of the home; there was no hot water in the home; and at the time of disposition regarding the Prior Petitions, mother had "very limited progress in her programs." The Department argued that therefore it "would be extremely premature to return [X.T.] to mother's custody . . . ."

At the disposition hearing, the Department stated, without objection, "[A]s I argued in the adjudication portion, the level of neglect and abuse based on the substance abuse by the mother and [the father of X.T.'s siblings] was very significant. [¶] These children had multiple physical injuries and very, very clear signs of neglect as detailed by the arresting officers who were interviewed and had said this had been a situation they had seen multiple times with this particular family. [¶] Mother is still in reunification with her other children. Still has monitored visitation with her other children, and while we recognize her desire and that she is making some progress at this time, it's only been a few months and [mother has a] history . . . of significant . . . substance abuse . . . ."

Mother forfeited on appeal her contentions that the juvenile court erred by using the facts contained in the court file regarding the Prior Petitions to support the issuance of the jurisdiction and disposition orders. The truth of the documents judicially noticed was before the trial court without objection. That material is the evidence upon which the juvenile court may rely. (See 1 Jefferson Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed.

10

2015) Objections; Limited Admissibility; Rules of Completeness, § 20.1, p. 20-2; Evid. Code, § 353, subd. (a).)[5]

## C. Jurisdiction

### 1. *Applicable Law*

Section 300, subdivision (b) provides in pertinent part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

"A jurisdictional finding under section 300, subdivision (b) requires '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.] 'Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical harm* or illness.' [Citations.]" (*In re John M*. (2013) 217 Cal.App.4th 410, 418.) The Department has the burden of showing specifically how the children have been or will be harmed. (*In re Matthew S*. (1996) 41 Cal.App.4th 1311, 1318.)

"'[C]ases finding a substantial physical danger tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. [Citations.]' [Citation.]" (*In re*

---

[5] It is arguable that even had there been an objection, at least the truth of the court orders and findings may be judicially noticed. (See 2 Jefferson Cal. Evidence Benchbook, *supra,* Judicial Notice, § 49.12, pp. 49-9 to 49-10.1.)

11

*Drake M.* (2012) 211 Cal.App.4th 754, 767.) As the court in *In re Adam D.* (2010) 183 Cal.App.4th 1250 stated, "[P]roof of current risk of harm is not required to support the initial exercise of dependency jurisdiction under section 300, subdivision (b), which is satisfied by a showing the child has *suffered* or there is a substantial risk that the child will suffer, serious physical harm or abuse. [Citations.]" (*Id.* at p. 1261.) "Juvenile dependency law in general does not require a child to be actually harmed before [the Department] and the courts may intervene. [Citation.]" (*In re Leticia S*. (2001) 92 Cal.App.4th 378, 383, fn. 3.) "'The purpose of dependency proceedings is to prevent risk, not ignore it.' [Citation.]" (*Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1104.)

### 2.    *Analysis*

On December 10, 2013, when mother was pregnant with X.T., the San Bernardino County juvenile court sustained the allegations of the Prior Petitions regarding X.T.'s siblings. The sustained Prior Petitions provided that "b-1 The Mother suffers from substance abuse and as a result is unable provide adequate and responsible care for the child[ren]. [¶] . . . [¶] b-3 The Mother has engaged in acts of domestic violence in the presence of the child[ren], placing the child[ren] at substantial risk of physical and emotional harm. [¶] . . . [¶] b-5 On or about November 17, 2013 and on prior occasions the mother's home was unsafe for the children in that the home was littered with trash, feces and urine, there was no hot water in the home and there was no food in the home, placing the child[ren] at substantial risk of harm and neglect." In addition, mother's use of drugs when pregnant with X.T. "unquestionably endanger[ed] the health and safety of her unborn child." (*In re Christopher R*. (2014) 225 Cal.App.4th 1210, 1217.)

It could reasonably be inferred that mother's drug use severely interfered with her ability to care for her young children. Mother had X.T.'s three siblings—all three years old and younger—in her care while taking drugs. The children went hungry, were scratched, were not clothed, and their bodies had feces and urine on them. The children lived in poor conditions; the floors and the walls of the home had feces and urine on

12

them, and there was no hot water.  Mother admitted in November 2013 that she was unable to care for X.T.'s siblings.

X.T. was about three months old at the time of the jurisdictional hearing.  As stated *ante*, the absence of adequate supervision and care poses an inherent risk to the physical health and safety of children of tender years.  (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 767.)  *In re Rebecca C.* (2014) 228 Cal.App.4th 720, cited by mother, is distinguishable.  There the court reversed the juvenile court's taking jurisdiction over a 13-year-old child because there was not substantial evidence that mother's substance abuse placed the child at substantial risk of harm, in part because the family home was appropriate.  (*Id.* at pp. 727-728.)  The court added that the child's not completing her homework was not evidence sufficient to establish the necessary risk.  (*Id.* at p. 727.)  Unlike here, the child was a teenager so that the presumption of a parent's ability to care properly for a child of "tender years" was not applicable.  (*In re Drake, supra,* 211 Cal.App.4th at p. 767.)  Also, unlike here, in *In re Rebecca C., supra,* 228 Cal.App.4th 720, the mother had demonstrated adequate care of the child.  (*Id.* at p. 727.)

Mother did participate in a substance abuse program immediately before and after X.T.'s birth.  This however is not enough to conclude that she resolved her substance abuse problem and therefore eliminated the risk to her infant child.  Mother's persistent use of drugs while caring for her three young children, her practice of ignoring the children's basic needs and welfare, and her use of drugs while pregnant with X.T., constitute substantial evidence supporting the juvenile court's conclusion that mother had an unresolved history of illicit drug use.

The foregoing is substantial evidence supporting the conclusion that there is a substantial risk of exposure of X.T. to serious physical harm or illness.  The juvenile court "need not to wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child."  (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)  Here, X.T. was an infant.  Mother's history with X.T.'s siblings and use of drugs during her pregnancy, constitute substantial evidence to support the juvenile court's jurisdictional findings under section 300, subdivision (b).

13

## D.    Disposition

Mother contends that there is not substantial evidence to support removing X.T. from mother's custody.  We disagree.

As relevant here, section 361, subdivision (c) prohibits the juvenile court from removing a child from his or her parents' custody "unless the juvenile court finds clear and convincing evidence [that] . . . :  [¶]  (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462; see Cal. Rules of Court, rule 5.695(d).)  "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent.  [Citation.]  The parent need not be dangerous and the minor need not have been harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.  [Citation.]"  (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

For the reasons described above regarding the juvenile court's sustaining the petition under section 300, subdivision (b), substantial evidence showed X.T. would be at risk of harm if he was released to mother.  Given how young X.T. was and his inability to protect himself, there were no alternate means to safely maintain him in the mother's care while she sought treatment for her substance abuse issues.

Mother contends that the dispositional order that she is to receive reunification services requiring her to participate in a domestic violence support group is improper.  Because mother did not object to the juvenile court's issuance of the order, we asked the parties to submit letter briefs on whether mother forfeited on appeal her contention.

Mother concedes that she did not object to the juvenile court's order but argues that her contention has not been forfeited because forfeiture is an equitable concept and "considerations which impact [the children's] welfare are of paramount importance.

14

[Citation.]" The order requiring mother to participate in a domestic violence support group however does not have an adverse affect on the child.

Mother contends that she did not forfeit her contention by failing to object before the juvenile court because the "Department invited the error by arguing for the services . . . ." "The doctrine of invited error prevents a party from asserting an alleged error as grounds for reversal when the party through its own conduct induced the commission of the error. [Citations.]" (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1118.) The doctrine of invited error does not apply here. It applies to the conduct of an appellant who asserts "an alleged error as grounds for reversal," not a respondent who argues in support of the challenged order or judgment. Plaintiff asserts that the juvenile court erred in issuing the order; the Department does not assert error.

Mother contends that it was "futile" for her counsel to object to the juvenile court's order that she was to receive reunification services requiring her to participate in a domestic violence support group because of "the rapid successions of the orders and considerations made by the court that day." Our Supreme Court in *People v. Wilson* (2008) 44 Cal.4th 758 said that "[a] litigant need not object . . . if doing so would be futile." (*Id.* at p. 793.) Even if the juvenile court issued orders in rapid succession, it does not support mother's contention that it would have been futile to object. In addition, as stated above, the Department recommended in its June 11, 2014, jurisdiction/ disposition report that mother be referred to a domestic violence awareness program. Mother was therefore aware that the Department was recommending that she receive services related to domestic violence over three months before the hearing at which juvenile court ordered them. Mother failed to discuss the issue.

At the September 26, 2014, disposition hearing, without objection, the juvenile court ordered that mother is to receive reunification services requiring her to participate in a domestic violence support group. We conclude mother forfeited her contention that the juvenile court erred in issuing that order. (*In re S.B.*, *supra,* 32 Cal.4th at p. 1293; *Shuster v. BAC Home Loans Servicing, LP, supra,* 211 Cal.App.4th at p. 512, fn. 4.)

15

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, Acting P. J.


We concur:


KRIEGLER, J.


KIRSCHNER, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.