Filed 3/23/21  Valenzuela v. City of Long Beach CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| SOFIA VALENZUELA et al., | B299381 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC672993) |
| v. | |
| CITY OF LONG BEACH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Affirmed.

Law Office of Gerald Philip Peters, Gerald P. Peters; Casillas & Associates, Arnoldo Casillas for Plaintiffs and Appellants.

Alderman & Hilgers, Allison R. Hilgers; Office of the Long Beach City Attorney, Charles Parkin, City Attorney, and Howard D. Russell, Principal Deputy City Attorney for Defendants and Respondents.

_____

## INTRODUCTION

Two Long Beach police officers fatally shot Jose Romero when he advanced on one of them with a knife. His daughter, Ashlee Romero, and his estate (together, "the Romero plaintiffs" or "plaintiffs") sued the City of Long Beach ("City") and the two officers for battery, negligence, and violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1). In the liability phase of the bifurcated trial, the jury found that one of the officers, but not the other, had used unreasonable force in shooting Romero.

As the damages phase commenced, the trial court and counsel realized the special verdict form had not asked the jury to determine whether the officer's use of unreasonable force was a substantial factor in causing Romero's death. With counsel's agreement, the trial court provided the jury with a special interrogatory and a modified substantial factor jury instruction. The jury found that plaintiffs had not proved that the officer's unreasonable use of force caused Romero's death. The trial court entered judgment for the City and the officers.

The Romero plaintiffs argue the special verdict form precluded the jury from considering plaintiffs' negligence cause of action, and the trial court erred in giving the special interrogatory and modified substantial factor instruction. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The Romero plaintiffs' arguments rest on the trial court's and counsel's conduct with respect to the jury instructions, the special verdict form, the special interrogatory, and the verdict. We thus provide a detailed description of the relevant trial proceedings and a truncated description of the underlying events.

2

A.      *Officers DeJongh and Hynes Respond to Romero's 911 Call*

On the night of September 4, 2016, Romero called 911 and told the dispatcher that he was a veteran, he had a gun, and he sought a "suicide by cop." The dispatcher understood Romero to mean that he wanted officers to respond to his location and shoot him.

Long Beach police officers Gerrit DeJongh and Michael Hynes responded to the scene, an apartment building in a high-density residential and commercial neighborhood. Along with a third officer, Sean Hunt, DeJongh and Hynes took positions to contain the perimeter until a specialized team could arrive to take Romero into custody. They observed Romero walking in circles in the street holding a knife, speaking on his cellular telephone, and making an exaggerated movement of putting something in the waistband of his pants. Hunt repeatedly tried to engage Romero verbally and asked him to put the knife down, but Romero appeared to ignore him.

B.      *DeJongh and Hynes Shoot Romero When He Advances on DeJongh with a Knife*

After 15 to 25 minutes of walking in the street, Romero suddenly ran out of sight into the courtyard of a building across the street from the officers. The three officers moved to try to locate him, but remained across the street to continue containing the area, with Hynes and Hunt on the sidewalk to the south of DeJongh. DeJongh and Hynes had their handguns out, and Hunt had a Taser.

Romero re-emerged approximately one minute later and began walking across the street towards Hynes and Hunt with the knife raised above his head. Eyewitnesses and those who viewed video of the incident described Romero's speed as a "brisk

3

walk, like a jog," "walking briskly," or a "fast-paced walk." When Romero reached the middle of the street, he suddenly changed direction and moved directly toward DeJongh from approximately 25 feet away with a "look of rage" or "look of intent" on his face. Hynes testified Romero "charged." Hynes said "Gerrit, watch out," and DeJongh shouted at Romero to drop the knife.

Romero took two or three steps toward DeJongh with the knife raised, and DeJongh and Hynes fired at Romero. DeJongh fired three times, and Hynes fired four times. DeJongh and Hynes each testified that each aimed at Romero's torso. DeJongh stopped firing when Romero stopped moving forward and fell to the ground approximately 10 feet from DeJongh. Hynes stopped firing when Romero was on the ground.

A video taken by a witness and reviewed by Lieutenant Lloyd Cox showed Romero on the ground before the officers fired the last three shots; Cox testified he did not see Romero move before the officers fired the last three shots. Although the officers fired seven shots, on the audio Cox could only identify the sound of six shots. Cox testified the third shot sounded unusual and could have been two shots being fired simultaneously.

The coroner testified that Romero sustained six gunshot wounds, two of which were fatal: one to the chin and one to the right shoulder and back. The two fatal wounds were consistent with being shot by a person standing in front of him. The coroner did not determine the sequence of the gunshots.

4

C.    *The Parties Agree on a Special Verdict Form*

Both sides submitted proposed special verdict forms with questions on battery and negligence.[1]

The Romero plaintiffs' proposed form contained two questions on battery and instructions:

> **QUESTION NO. 1:**  Have the plaintiffs proven by a preponderance of the evidence that any of the following defendants harmed Jose Romero by using unreasonable force against him?
>
> Defendant Gerrit Dejongh YES_____ NO_____
>
> Defendant Michael Hynes YES_____ NO_____
>
> *If your answer to Question No. 1 is "Yes", proceed to Question No. 2. If your answer to Question No. 1 is "No," proceed to Question No. 3* [regarding negligence].
>
> **QUESTION NO. 2:**  Were any of the following defendants' use of unreasonable force a substantial factor in causing harm to Jose Romero?
>
> Defendant Gerrit Dejongh YES_____ NO_____
>
> Defendant Michael Hynes YES_____ NO_____
>
> *If your answer to Question No. 2 is "Yes", proceed to Question No. 3* [sic].  *If your answer to Question No. 2*

---

[1]    The parties stipulated that if the jury found the commission of a battery, the City would be liable on the Bane Act cause of action.  The parties agreed that the jury need not be instructed on the Bane Act cause of action and that the special verdict form need not include questions about its elements.  The parties also stipulated that the City's liability for battery and negligence derived from that of DeJongh and Hynes pursuant to respondeat superior.

*is "No," proceed to Question No. 3* [regarding negligence]. (Bold and italics in original.)

Defendants' proposed form contained a single battery question and instructions, without a substantial factor question:

**Question No. 1:** Did either defendant officer use unreasonable force against Jose Romero?

Gerrit DeJongh    _____**Yes** _____**No**

Michael Hynes    _____**Yes** _____**No**

*If you answered "Yes" to Question 1, for either or both of the officer(s), then go to the directions for Question 4* [damages] *and <u>do not</u> answer Questions 2 and 3* [regarding negligence]. *If you answered "No" to Question 1 for both officers, then answer Question No. 2.* (Bold, italics, and underlining in original.)

During a subsequent discussion about the jury instructions, both parties stated their understanding that both proposed verdict forms contemplated findings of battery or negligence, but not both. Following that discussion, both sides submitted revised proposed special verdict forms.

The record does not contain the revised forms, but after reviewing them, the trial court stated:

So as I look at your special verdict form, I see the two forms that are present—I see two differences. The first difference is that the defendant has one substantial factor question for negligence . . . and plaintiff has two, one for negligence and one for unreasonable force.

The trial court asked defendants why their form did not have a substantial factor question for battery. Defense counsel responded:

[T]he unreasonable force as we have it laid out is the battery; and it's pretty clear that if there was an unreasonable use of force, that unreasonable use of force would be a substantial factor in causing the harm here, so we just didn't see it as necessary.

Plaintiffs' counsel replied:

[W]ith that explanation, . . . I shouldn't, if Plaintiffs are successful . . . expect a question or an appeal on the substantial factor in the jury instructions. . . . I take it that we wouldn't need the substantial factor. Less is more, especially when it comes to the verdict form.

So with that proviso that they recognize if they find a battery, there's substantial factor, I'm good.

Following this agreement, the trial court ruled that it would use defendants' verdict form, but modify the form to identify the officers by name in the comparative negligence section.

The court and the parties had a detailed discussion about the battery question on the form, including that the form instructed the jury that it could find battery or negligence or neither, but not both. The court clarified the specific wording of the instructions following the battery question, i.e., that if the jury found unreasonable force, it should not answer any more questions. Plaintiffs' counsel did not object and defense counsel affirmatively agreed.

The court modified the form in accordance with the discussion and directed the clerk to provide copies to counsel. The trial court instructed counsel:

If you have changes, mark it up; but if you all agree to it, let me know. If it's agreeable to you, then one

7

attorney from each side initial the corner of each page.

Both attorneys initialed the final special verdict form, indicating that they agreed to the form.

The final special verdict form had three sections: battery, negligence, and comparative negligence. The battery section contained one question and instructions:

**Question No. 1:** Did either defendant officer use unreasonable force against Jose Romero?

Gerrit DeJongh    _____**Yes** _____**No**

Michael Hynes    _____**Yes** _____**No**

*If you answered "Yes" to Question 1, for either or both of the officer(s), then stop here, answer no further questions, and have the presiding juror sign and date this form. If you answered "No" to Question 1 for both officers, then answer Question No. 2.* (Bold and italics in original.)

The negligence section followed the battery section and had two questions and instructions:

**Question No. 2:** Was either defendant officer negligent?

Gerrit DeJongh    _____**Yes** _____**No**

Michael Hynes    _____**Yes** _____**No**

*If you answered "Yes" to Question 2 for either or both of the officer(s), then answer Question 3 for the officer(s) for whom you answered "Yes" to Question 2. If you answered "No" to Question 2 for both officers, then stop here, answer no further questions, and have the presiding juror sign and date this form.*

**Question No. 3:** Was the officer's negligence a substantial factor in causing harm to Jose Romero?

8

Gerrit DeJongh      _____**Yes** _____**No**

Michael Hynes      _____**Yes** _____**No**

*If you answered "Yes" to Question 3 for either or both of the officer(s), then answer Question 4. If you answered "No" to Question 3 for both officers, then stop here, answer no further questions, and have the presiding juror sign and date this form.* (Bold and italics in original.)

The comparative negligence section followed the negligence section.

D.      *The Jury Instructions and Verdict*

The trial court instructed the jury on the liability causes of action. The instructions included modified versions of CACI No. 407 (comparative negligence), CACI No. 430 (causation: substantial factor), CACI No. 434 (negligence: alternative causation), CACI No. 440 (negligence by unreasonable force by law enforcement officer), CACI No. 1304 (self-defense), and CACI No. 1305 (battery by peace officer). The jury returned a verdict the same day, finding that DeJongh had not used unreasonable force against Romero, but Hynes had.

E.      *Plaintiffs Propose, and the Parties Agree to, a Special Interrogatory*

The following day defendants moved for a directed verdict on the ground that plaintiffs had not proved that Hynes's conduct caused Romero's death. Defendants argued that because the jury had been instructed in CACI No. 1305 that battery required a finding that the defendant's use of unreasonable force was a substantial factor in causing Romero's "harm," as opposed to his death, the jury had not found that Hynes caused Romero's death. Defendants argued plaintiffs had not proved Romero "would not

9

have died if Officer Hynes never fired" and that therefore plaintiffs had not proved wrongful death and could not recover wrongful death damages.

The court took defendants' motion under submission. The trial proceeded to the damages phase with testimony from Ashlee Romero and Jose Romero's former wife, followed by closing arguments and jury instructions. The jury began deliberating on damages.

As the jury deliberated, the court and counsel discussed the liability phase verdict:

> [COURT:] So the special verdict form that they answered yes to with respect to Officer Hynes on question number 1 tells them, "If you answer yes as to either or both, then stop here, answer no further questions and move on," nothing about whether or not that caused his death.
>
> [PLAINTIFFS' COUNSEL:] [I] think that—are you asking if there was evidence about his death?
>
> [COURT:] No.
>
> [PLAINTIFFS' COUNSEL:] Okay.
>
> [COURT:] It's just the jury hasn't answered that question. . . . [I]f Ashlee can only recover for wrongful death, where is their finding that they—that Officer Hynes caused—that the battery caused his—
>
> [PLAINTIFFS' COUNSEL:] [W]e had that specific— we had proposed a proximate cause question for the battery, if the court may remember, and then [defense counsel] said . . . it's assumed, Your Honor, if they accept the battery.
>
> And then I specifically said, "Okay. As long as you are not going to . . . surprise me with an appeal later, I'll stipulate to there not being a causation question."

10

. . . [W]e had the causation question, [defense counsel] agreed that it would be subsumed, there would be causation and a Bane Act violation if there was a finding of battery . . . .

[M]y point is, Your Honor, for them to come back now—

[COURT:]  Well, the question you proposed was, "Were any of the following defendants' use of unreasonable force a substantial factor in causing harm to Jose Romero?"

[PLAINTIFFS' COUNSEL:]  For the battery.

[COURT:]  If I had given them that, sure, it caused him harm, but did it cause his death?

[PLAINTIFFS' COUNSEL:]  [T]he only harm at issue was the death.

[COURT:]  But you have to prove that[,] that . . . the battery killed him. . . . I didn't think the jury was going to find one officer and not the other. . . . [B]ut the jury would have to find that a shot or shots that they considered the battery killed him.

[PLAINTIFFS' COUNSEL:]  [W]e offered—and I argued—

[COURT:]  I'm not talking about evidence, I'm talking about whether or not the jury has found that. . . .

[DEFENSE COUNSEL:]  [F]irst of all, the jury instruction itself that was agreed to by the parties—aside from the verdict form, 1305 says harm to Jose Romero.  It doesn't say Mr. Romero's death.  So the law they were applying is harm, and bullets can cause harm short of death. . . .

[T]he stipulation was that if there was a finding on reasonable force, we stipulated that it would cause

11

harm. That's why it wasn't a substantial factor issue on the verdict form.

We were never stipulating that it caused death, and we didn't call Dr. Poukens [the coroner] in. The plaintiffs called Dr. Poukens in, and they elicited the evidence that there was more than one fatal shot, including shot number 2 as numbered by Dr. Poukens, which, the only reasonable inference, came from Officer DeJongh, whose force was reasonable, and they did not elicit testimony from Dr. Poukens that the entirety of the shots killed him.

He said there was a fatal shot. That's reasonable. . . . [W]e don't know what the jury has found at this point, which is why we said it's a failure of proof of causation of death. . . .

[COURT:] I'm not suggesting any ruling on my part on the current motion or any future motion. But we still have this jury, and I'm wondering if there's any way to fix this. Because there's a problem here that . . . I didn't foresee, that they would find that one officer committed a battery and the other officer didn't.

[PLAINTIFFS' COUNSEL:] [W]e could ask them . . . an interrogatory about the cause of death. "Yes or no, did Officer Hynes' shooting cause Jose Romero's death?". . .

[COURT:] [S]omething to the effect, "Did any shot fired by Officer Hynes that the jury believed constituted a battery cause the death of the decedent?"

[DEFENSE COUNSEL:] Something like that, Your Honor.

[COURT:] You guys want to work on something? . . . [I]f you'll agree—but I think there's a real problem

12

here. . . . [A]gain, I'm not making any rulings, but I don't know about you, but I don't want to try this case again. So . . . if you can agree on something, why don't you start working on that and see if you can agree on something.

After a short recess, the trial court read the following special interrogatory to counsel: "Have plaintiffs proved that any shot or shots fired by Officer Hynes that you found unreasonable caused Jose Romero's death?" Plaintiffs' counsel did not object and defense counsel stated, "correct." The record does not reflect which party drafted the special interrogatory, or if the court did, but both counsel initialed it.

The trial court summoned the jury and instructed them:

[COURT:] All right. So I made a mistake. The special verdict form that you got originally where you answered question number 1 as to Officer DeJongh and Officer Hynes, and you answered yes to Officer Hynes and no to Officer DeJongh, that finding that you made has left us—me in a bit of a quandary about which of the shots caused the harm.

You heard the attorneys talking about the harm to Ashlee Romero and the death of Jose Romero. So I'm going to ask that you stop deliberating on damages and I'm going to give you what we're going to call a special interrogatory. It's one question, okay? And it is, "Have plaintiffs proved that any shot or shots fired by Officer Hynes that you found unreasonable caused Jose Romero's death?" . . .

So you can go back to the jury deliberation room. You can start deliberating on the question that I just read to you, and we'll have the form in to you in just a few minutes.

13

F.    *Plaintiffs Reiterate Their Stipulation to the Special Interrogatory*

After the jury began deliberating on the special interrogatory, plaintiffs' counsel expressed reservations. The trial court gave plaintiffs the opportunity to withdraw their agreement to the interrogatory. Plaintiffs reiterated that they agreed:

> [PLAINTIFFS' COUNSEL:]  [F]or the record, earlier I voiced my objection.  I made my point about waiver. . . . [M]y position still is that that had been waived.
>
> [COURT:]  Then we can't do this.  Look, if you object and you want to stand on the verdict as it is, fine.  I'll call them back in and start deliberating on—I thought we all agreed.  If you have an objection—tell [the clerk] to bring them back in.  Then they just go on damages.
>
> [PLAINTIFFS' COUNSEL:]  We're fine, Your Honor.
>
> [COURT:]  Seriously, . . . I understand you don't like it, but—and if you want to stand on the verdict . . . as it is, then we will do that.  Otherwise . . . but you both have to stipulate we're going to do this.  If we're not going to do this, then we're not going to do this.  I thought you all agreed.  But if you don't, if you object, I will—we'll bring them right back in here.
>
> [PLAINTIFFS' COUNSEL:]  We're good, Your Honor. We'll stipulate.

G.    *The Trial Court Reinstructs the Jury with a Modified Substantial Factor Instruction, at Plaintiffs' Request*

During deliberations on the special interrogatory, the jury asked:  "If no sequence of shots were provided to the jury, how are we, the jury, going to be able to make an informed decision?"  The

14

parties agreed that the coroner's testimony and the burden of proof instruction (CACI No. 200) should be read to the jury.

The following day, plaintiffs' counsel asked the trial court to re-read the alternate cause instruction (CACI No. 434). Plaintiffs' counsel withdrew the request after the trial court and defense counsel observed that CACI No. 434 was a negligence instruction, not a battery instruction. Plaintiffs' counsel agreed, and asked the court to re-read the substantial factor instruction (CACI No. 430).

The court and counsel discussed substantial factor at length. The parties ultimately stipulated to instructing the jury with a modified version of the previously given substantial factor instruction, replacing "harm" with "death." After that instruction, and following further deliberations, the jury answered "no" to the special interrogatory, finding that plaintiffs had not proved that any shot fired by Hynes that the jury found unreasonable had caused Jose Romero's death.

After taking the verdict, the trial court asked counsel if there was "[a]ny reason why [the court] can't excuse these jurors?" Both counsel responded no, and the court discharged the jury. The court subsequently entered judgment for defendants.

Plaintiffs moved for a new trial, which the trial court denied. Plaintiffs timely appealed.

## DISCUSSION

A.    *Standard of Review*

"'The propriety of jury instructions is a question of law that we review de novo. [Citations.]' Similarly, a special verdict's correctness is analyzed as a matter of law and therefore subject to de novo review." (*Jackson v. AEG Live, LLC* (2015)

15

233 Cal.App.4th 1156, 1187.) "A court's instruction to the jury to deliberate further to correct a potentially ambiguous or inconsistent verdict is reviewed for abuse of discretion." (*McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 91.)

B.     *Plaintiffs Approved the Special Verdict Form and Forfeited Any Defect in the Verdict*

The Romero plaintiffs argue the special verdict form precluded the jury from determining whether either officer had acted negligently once the jury found Hynes had used unreasonable force. We agree the verdict form incorrectly instructed the jury not to deliberate on negligence as to DeJongh after the jury found he had not used unreasonable force. Plaintiffs, however, expressly approved the verdict form. Plaintiffs also did not request that the jury deliberate on negligence as to DeJongh after the jury found DeJongh had not used unreasonable force, or after the jury's special interrogatory finding as to Hynes.

The battery section of the verdict form instructed the jury that if it found that either officer used unreasonable force, the jury should stop and answer no further questions, i.e., the jury should not proceed to the negligence questions. If the jury found that neither officer had used unreasonable force, the form instructed the jury to proceed to the negligence questions.

The jury found that DeJongh had not used unreasonable force, but Hynes had. In accordance with the form's instructions, the jury did not answer any further questions on the form. Thus, despite finding that DeJongh had not used unreasonable force, the jury did not continue to the negligence questions as to DeJongh. It should have.

16

Plaintiffs agreed to the verdict form, however. The trial court specifically instructed counsel to review the final verdict form and stated, "[i]f it's agreeable to you, then one attorney from each side initial the corner of each page." Plaintiffs' counsel initialed the verdict form. Plaintiffs' express agreement to the form waived their claim of verdict form error on appeal. (See *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 534 [objection to form of questions in special verdict generally must be raised in trial court or issue is waived on appeal].)

Even more significantly, plaintiffs had ample opportunity to remedy the erroneous verdict form instructions before the trial court discharged the jury. Plaintiffs did not do so.

Following the jury's verdict on the use of unreasonable force as to battery, plaintiffs proposed, and the parties agreed to, the special interrogatory asking whether plaintiffs had proved that any shot Hynes fired that the jury found unreasonable had caused Romero's death. The jury answered no. At that point, the jury had found that neither DeJongh nor Hynes was liable for battery.[2]

At no point after the jury's unreasonable force verdict or its special interrogatory finding did any party ask the trial court to direct the jury to deliberate on the negligence cause of action. Of particular note, the record does not contain any discussion of the negligence cause of action after the jury's finding on the special

---

[2]	The Romero plaintiffs contend that by finding Hynes used unreasonable force, the jury rejected Hynes's self-defense affirmative defense and necessarily found that Hynes caused Romero's death. The jury found the opposite; in the special interrogatory, the jury found that none of the shots Hynes fired that the jury found unreasonable caused Romero's death.

17

interrogatory.  The trial court announced the special interrogatory finding, asked counsel if there was any reason the court should not excuse the jury, and, with neither party objecting, discharged the jury.

"'Failure to object to a verdict before the discharge of a jury and to request clarification or further deliberation precludes a party from later questioning the validity of that verdict if the alleged defect was apparent at the time the verdict was rendered and could have been corrected.'" (*Keener v. Jeld–Wen, Inc.* (2009) 46 Cal.4th 247, 263-264, citation, fn., and italics omitted (*Keener*).)  "The obvious purpose for requiring an objection to a defective verdict before a jury is discharged is to provide it an opportunity to cure the defect by further deliberation." (*Juarez v. Superior Court* (1982) 31 Cal.3d 759, 764-765.)

Here, "'the alleged defect was apparent at the time the verdict was rendered and could have been corrected.'" (*Keener*, *supra*, 46 Cal.4th at p. 264, italics omitted.)  Plaintiffs knew they had both battery and negligence causes of action and stated throughout the trial that they were pursuing both causes of action.  Plaintiffs' counsel argued in closing argument that if the jury did not find battery, "you move on to negligence."  The court instructed the jury on both battery and negligence, and the special verdict form stated that if the jury answered "no" to the battery question for both officers, the jury should move to the negligence questions.  When the jury made its finding on the special interrogatory on the battery cause of action, it was apparent the jury had not deliberated on the negligence cause of action because the only findings the jury had made pertained to battery.

This defect in the verdict could have been easily remedied. Had plaintiffs brought to the trial court's attention that, because the jury had found both officers not liable for battery, the jury should deliberate on the negligence cause of action, the trial court could have instructed the jury to do so. Instead, plaintiffs did not object that the jury had not considered negligence and did not object to the trial court's discharging the jury after the verdict on the special interrogatory. Plaintiffs' failure to request that the jury deliberate on negligence after the jury found no battery precludes the Romero plaintiffs from challenging the verdict now.[3]

C.      *The Romero Plaintiffs Invited Any Error Regarding the Special Interrogatory*

The Romero plaintiffs argue the trial court should have enforced defendants' substantial factor stipulation and the trial court abused its discretion in giving the special interrogatory. The Romero plaintiffs also contend the trial court lacked authority to reinstruct the jury with the modified substantial factor instruction.

It is well settled that trial judges have the discretion—even the obligation—to require the jury to correct or clarify a potentially ambiguous verdict. (*Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 303.) "Where the discrepancy is identified before the jury is discharged, the court retains control of the jury and may, pursuant to [Code of Civil Procedure] section 619, use its power to correct the verdict before it becomes final. [Citation.] In fact, it is the court's duty in such a case to attempt to remedy

---

[3]     The Romero plaintiffs' argument that the judgment in favor of DeJongh should be reversed because the jury did not consider whether DeJongh was negligent fails for the same reason.

19

the situation." (*Ibid.*, italics omitted.)  We need not determine whether the trial court abused its discretion in giving the special interrogatory and the modified substantial factor instruction, however, because plaintiffs invited any alleged error.

"The doctrine of invited error prevents a party from asserting an alleged error as grounds for reversal when the party through its own conduct induced the commission of the error." (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1118.)  The doctrine "applies 'with particular force in the area of jury instructions,'" and "bars an appellant from attacking a verdict that resulted from a jury instruction given at the appellant's request." (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653; accord, *Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121 ["defendant cannot attack a verdict resulting from an erroneous instruction which it promoted"]; *Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241, 255 [jointly-requested instructions]; *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 567 [jointly-requested instruction].)

Following the jury's finding that Hynes had used unreasonable force, plaintiffs proposed "an interrogatory about the cause of death.  'Yes or no, did Officer Hynes' shooting cause Jose Romero's death?'"  The trial court and defense counsel agreed, both counsel initialed the special interrogatory, and the court read the interrogatory to the jury.[4]

---

[4]     The Romero plaintiffs claim the trial court's prefatory statements before reading the special interrogatory improperly shifted the burden of proving the substantial factor element to plaintiffs.  Plaintiffs bore the burden of proving the unreasonable force the jury found was a substantial factor in causing Romero's

When, notwithstanding counsel's prior agreement, plaintiffs' counsel subsequently expressed reservations about the special interrogatory, the trial court offered plaintiffs the opportunity to withdraw the special interrogatory and "stand on the verdict as it is." The court told counsel it would not proceed with the special interrogatory if both counsel did not agree. Plaintiffs could have elected at that time to withdraw their agreement to the special interrogatory, "stand on the verdict as it [was]," and argue that defendants' stipulation meant the jury had found Hynes liable for wrongful death battery. Plaintiffs' counsel chose instead to reiterate plaintiffs' agreement to the special interrogatory.

During the deliberations on the special interrogatory, the parties stipulated to the court's re-reading the substantial factor instruction, replacing "harm" in the instruction with "death." Plaintiffs' counsel agreed that "clarification as to what substantial factor is is [*sic*] appropriate" and specifically requested that the court replace "harm" with "death."

Plaintiffs proposed and stipulated to the special interrogatory, and rejected an opportunity to withdraw their agreement and stand on the verdict and defendants' substantial factor stipulation. Plaintiffs also agreed both that the court should reinstruct the jury on substantial factor and to the specific modification to the instruction. The invited error doctrine

---

death. Furthermore, plaintiffs did not object to the trial court's brief remarks, which, in any event, did not address the burden of proof.

precludes plaintiffs from asserting these alleged errors as grounds for reversal now.[5]

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.


MCCORMICK, J.[*]


We concur:


SEGAL, Acting P. J.


FEUER, J.

---

[5]    The Romero plaintiffs argue the trial court erred in declining plaintiffs' request to reinstruct the jury on the alternate cause negligence instruction (CACI No. 434).  Plaintiffs asked the court to re-read that instruction while the jury deliberated on the special interrogatory.  The court and defense counsel noted that the instruction was a negligence instruction and the jury was deliberating battery.  Plaintiffs' counsel agreed and withdrew the request.  The trial court did not err in failing to re-read the alternate cause instruction after plaintiffs withdrew their request for a re-reading.

[*]    Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.